ROTHSCHILD & Co. Appellee, *vs.* STEGER & SONS PIANO
MANUFACTURING COMPANY *et al.*—(WALTER C. NEW-
MAN *et al.* Appellants.)

*Opinion filed October 26, 1912—Petition withdrawn Dec. 5, 1912.*

1. CONTEMPT—*distinction between criminal and civil or reme-dial contempts.* In Illinois the only recognized distinction between criminal and civil or remedial contempts is, that in the latter pro-ceedings the court will hear proofs to contradict the answer of the party charged with the contempt, while in a proceeding for criminal contempt if the party purges himself of the alleged con-tempt by his answer he is discharged.

2. SAME—*the character of judgments in criminal and civil or remedial contempts is the same.* Fine and imprisonment in the county jail for a definite term,—either one or both, in the discre-tion of the court,—is recognized in Illinois as a proper judgment for the violation of a prohibitory injunction of a civil nature, as well as a proper means of punshment in a criminal contempt pro-ceeding instituted to vindicate the authority of the court.

3. SAME—*when judgment would be merely erroneous and not void.* Even if it were improper for the court, in a proceeding for remedial contempt, to assess a fine and enter a judgment for a definite term of imprisonment, still, if the court had jurisdiction of the subject matter and of the person of the defendant, its judg-ment would, at most, be merely erroneous and not void.

4. SAME—*proceeding for civil contempt is not regarded as a private remedy of complainant.* A proceeding for contempt for the violation of a prohibitory injunction is not regarded in Illinois as a private right of action in the party at whose instance the in-junction was granted, but the fine is so far regarded as a penalty that it is treated as other fines, and is paid over, when collected, not to complainant in the injunction proceeding, but to the public.

5. COURTS—*binding authority of decision of the United States Supreme Court.* A decision of the Supreme Court of the United States in a case taken to it on a writ of error from a State court because of a Federal question being involved is a binding prece-dent for State courts, not only in the case presented, but in any subsequent case based on substantially the same facts and involv-ing the same question.

6. SAME—*when decision of the United States Supreme Court is merely persuasive authority.* In respect to questions of general law, over which a State court has complete and final jurisdiction,

the decisions of the Supreme Court of the United States are merely persuasive authority and not binding precedents, and if it would be necessary for the highest court of a State to overrule its former decisions in order to conform to the views of the United States Supreme Court on such questions it is its duty to adhere to its former decisions.

7. SAME—*when decision of the United States Supreme Court is not binding on State courts.* A decision by the United States Supreme Court, rendered on writ of *certiorari* to the court of appeals of the District of Columbia, that a proceeding begun by petition in the original cause, charging violation of an injunction, is a remedial proceeding in favor of the complainant and that the judgment should not be for both fine and imprisonment for a definite term, is a decision relating to procedure and the character of judgment to be entered in a civil or remedial contempt proceeding, and is not a precedent which State courts are bound to follow.

8. CONSTITUTIONAL LAW—*what is not required by "due process of law" clauses of the Federal constitution.* The "due process of law" clauses of the Federal constitution do not require that every judgment rendered by a State tribunal under which one may be deprived of life, liberty or property shall be in accord with the decisions of the Supreme Court of the United States, except in those cases wherein that court, under the constitution, is charged with the duty of expounding the "supreme law of the land."

9. SAME—*when a judgment in a contempt proceeding is "due process of law."* Where the violation of an injunction is brought to the attention of the circuit court of Illinois which granted it, by the filing of a petition in the original cause setting up the facts, and the defendants are notified and appear and have a hearing on the matters alleged, according to the established rules and practice in Illinois, a judgment finding the defendants guilty and imposing a fine and definite jail sentence is "due process of law."

APPEAL from the Circuit Court of Cook county; the Hon. KICKHAM SCANLAN, Judge, presiding.

CARPENTER & BARNHARDT, for appellants Walter C. Newman and S. E. Moist.

FREDERICK MAINS, and WESLEY H. MAINS, for appellants the Steger & Sons Piano Manufacturing Co., Chris G. Steger, John V. Steger, the Singer Piano Co., and William F. Grosskopf.

Judah, Willard, Wolf & Reichmann, and Alvin W. Wise, for appellee.

Mr. Justice Vickers delivered the opinion of the court:

Rothschild & Co., a corporation engaged in the department store business in Chicago, among other things did an extensive retail business in pianos. It is alleged that since May 15, 1906, the company has used in its piano business the word "Meister" as a trade-mark for pianos handled by it; that said Meister pianos had become well known all over the United States as high-grade, low-priced pianos and acquired great popularity; that said company had expended large sums of money in advertising said Meister pianos and built up a profitable trade, and that said trade name, and good will connected therewith, had become a valuable asset in the company's business; that said company had caused said trade-mark to be registered. Rothschild & Co. filed a bill in equity in the circuit court of Cook county alleging the foregoing facts and charging that the Steger & Sons Piano Manufacturing Company was using the name "Meister" in the exhibition and sale of pianos, to the injury and damage of the complainant's business, and secured a temporary injunction restraining said Steger & Sons Piano Manufacturing Company, its agents and servants, from using the name "Meister" in advertising and selling pianos. The order for an injunction was entered November 29, 1911, and commands said defendants, and each of them, their agents, attorneys, solicitors, salesmen and servants, to absolutely desist and refrain from directly or indirectly selling and delivering to any persons, or advertising or offering for sale, pianos having thereon the name "Meister" or the name "Rothschild & Co.," or any name similar thereto, or any pianos advertised, represented or stated by defendants or their employees to be Meister pianos or pianos made for sale as Meister pianos. After the injunctional order had been en-

tered the complainant filed a petition entitled in the origi-
nal cause, reciting the filing of the bill, the issuance of the
injunction and service thereof on the several defendants,
and also on the S. E. Moist Piano Company and Walter
C. Newman, who were alleged, on information and belief,
to be agents of said Steger & Sons Piano Manufacturing
Company, charging said defendants with a violation of
the injunction, and praying that a rule be entered requir-
ing the defendants to show cause, within a reasonable time,
why an attachment should not issue against them, and
that they be severally attached for contempt of the order
and injunction of the court entered in said cause. The
rule to show cause was entered on December 7, 1911. On
December 12, 1911, the Steger & Sons Piano Manufactur-
ing Company, and other defendants, filed a joint and sev-
eral answer to the original bill. Defendants also filed an
answer to the petition charging a violation of the injunc-
tion, in which the answer to the original bill is referred
to and by reference made a part of the answer to the peti-
tion. A hearing was had before the court upon the pe-
tition and answer, and affidavits were submitted by the
respective parties. The court found the defendants guilty
of a contempt of court as charged, and assessed a fine
against each of the corporations and a fine and a definite
jail sentence against each of the other defendants. A sepa-
rate judgment was entered against each of the seven de-
fendants below, from which they have prosecuted separate
appeals to this court. The controlling questions being the
same in each case, the causes were consolidated and taken
as one case in this court.

There is no serious controversy as to the facts. In all
of these cases the appellants contend that this contempt
proceeding belongs to the civil or remedial class, and that
under the authority of *Gompers* v. *Buck's Stove and Range
Co.* 221 U. S. 418, the court had no power to enter a
judgment inflicting a fine and fixing a definite term of im-

prisonment for the violation of a prohibitory injunction in the class of cases to which these proceedings belong. It is also the contention of appellants that the entry of such judgments as were entered in these cases deprives appellants of their liberty and property without due process of law. The constitutional question thus raised gives this court jurisdiction by a direct appeal from the trial court.

The distinction between criminal and civil contempts has been recognized in this jurisdiction ever since the decision in *Crook* v. *People,* 16 Ill. 534, which was decided in 1855. Since that time a large number of cases have been determined in this court involving the application of the rules of law relating to civil contempts to the various situations presented by the different cases. Among the cases heretofore determined in this court the following may be cited: *Leopold* v. *People,* 140 Ill. 552; *People* v. *Diedrich,* 141 id. 665; *Lester* v. *People,* 150 id. 408; *Loven* v. *People,* 158 id. 159; *O'Brien* v. *People,* 216 id. 354; *Franklin Union* v. *People,* 220 id. 355; *Flannery* v. *People,* 225 id. 62; *Barnes & Co.* v. *Typographical Union,* 232 id. 402; *Hake* v. *People,* 230 id. 174.

In the case last above cited many of the previous decisions in this State were reviewed and we sought to make the distinction between criminal and remedial contempts clear. In the early case of *Crook* v. *People, supra,* the rule was announced that in a civil contempt the court would hear proofs to contradict the answer of the party charged with the contempt, while in a proceeding at law for a criminal contempt the law is otherwise. In such cases, if the party purges himself of the alleged contempt by his answer he is discharged. This distinction has been maintained in all of the subsequent cases. None of the cases in this State recognize any difference in the power of the court in respect to the character of the judgment to be entered in the two classes of contempts. Fine and imprisonment in the county jail for a definite term,—either

one or both, in the discretion of the court,—have uniformly been recognized as a proper judgment for the violation of a prohibitory injunction of a civil nature, as well as a proper means of punishment in a criminal contempt instituted to vindicate the authority of the court. Undoubtedly, if a party were charged with a contempt in refusing to pay alimony, or to surrender property to a receiver, or to make a conveyance, or to deliver possession in accordance with a decree. of a competent court, it would be proper to commit him until he complied with the order. The order in such case is not made solely to vindicate the authority of the court but is remedial, and is intended to compel the performance of the thing required by the decree of the court for the benefit ,of the party complainant. As said by the court in *In re Nevitt,* 117 Fed. Rep. 451, in such case "he carries the key to his prison in his own pocket." A compliance with the requirements of the order will entitle the party in contempt to his discharge, and he may be held indefinitely or so long as he refuses to obey the court's order. But even in this class of remedial contempts, if the court should assess a fine or enter a judgment for a definite term of imprisonment, the court having jurisdiction of the subject matter and of the person of the defendant, its judgment would not be void but at most only erroneous.

But appellants insist that the United States Supreme Court, in *Gompers* v. *Buck's Stove and Range Co. supra,* has announced a different rule, under which the judgments in the cases at bar must be reversed. We agree with appellants' contention that the rule announced in the *Gompers case* is different, in some important respects, from that established by the decisions of this court, and if the decision in that case is a binding precedent in the sense that it is our judicial duty to follow it, it will require a reversal of these judgments, even though in so doing we are compelled to overrule any number of previous decisions of this

court to the contrary. (Black on Law of Judicial Precedents, sec. 109.) To determine the extent to which that decision is binding on a State court it will be necessary to understand the nature of the proceeding, how the questions arose, and the final conclusions reached by the court.

The Supreme Court of the District of Columbia is a court of original chancery and common law jurisdiction. The Buck's Stove and Range Company filed an original bill in the Supreme Court of the District of Columbia against the American Federation of Labor, Samuel Gompers, Frank Morrison, John Mitchell, and others, and obtained a temporary injunction restraining and enjoining the defendants from conspiring, agreeing or combining in any manner to obstruct or destroy the business of the complainant, or from declaring or threatening any boycott against the complainant or its business or the product of its factory and from abetting, aiding or assisting in any such boycott, and from printing, issuing, publishing or distributing through the mails, or in any other manner, any copy or copies of the *American Federationist* or other newspaper which contains the name of the Buck's Stove and Range Company on the "We Don't Patronize" or the "Unfair" list. Some months later the complainant filed a petition in the original cause alleging that Samuel Gompers, John Mitchell and Frank Morrison had disobeyed the injunction by publishing statements which either directly or indirectly called attention to the fact that the Buck's Stove and Range Company was on the "unfair" list, and that the said defendants had thereby continued the boycott which had been enjoined. The defendants answered the petition, and a hearing was had resulting in a finding that Gompers, Mitchell and Morrison were guilty of contempt of court in making certain publications prohibited by the injunction, and they were sentenced to imprisonment for twelve, nine and six months, respectively. To obtain a review of these judgments the defendants prosecuted an appeal to

the court of appeals, where the judgments below, after some slight modifications, were affirmed. Section 234 of the code of the District of Columbia provides: "In any case heretofore made final in the court of appeals, it shall be competent for the Supreme Court of the United States to require, by *certiorari* or otherwise, such case to be certified to said Supreme Court for its review and determination, with the same power and authority in the case as if it had been carried by appeal or writ of error to said Supreme Court." Under the above section the defendants obtained a *certiorari* from the Supreme Court of the United States, and the cause was thereby removed to that tribunal for review.

The power of the United States Supreme Court to award a *certiorari* to the court of appeals of the District of Columbia does not appear to depend either upon the amount in controversy or the character of the questions involved. By another section of the code it is provided that the judgment of the court of appeals shall be final in all cases wherein the amount in controversy is less than $5000. The section of the code we have quoted above seems to authorize the Supreme Court of the United States to issue a *certiorari* in any case wherein the amount involved is less than $5000, and this is the construction which the United States Supreme Court has given section 234 of the district code. (*Sinclair* v. *District of Columbia,* 192 U. S. 16.) The allowance of a writ of *certiorari* by the Supreme Court of the United States to the court of appeals of the District of Columbia does not indicate that the court considered that there was a Federal question involved, such as would be necessary to warrant the court in awarding a writ of error to a State court. It does not appear that the defendants in that case raised the question that the judgment deprived them of their liberty without due process of law. If any such question was argued it was not noticed in the opinion of the court. The only

constitutional question that seems to have been presented in that case was the contention that the injunction was issued in violation of the first amendment of the constitution of the United States, relating to freedom of the press, and this question was brushed aside by the court with the remark that "we will not enter upon a discussion of the constitutional question raised, for the general provisions of the injunction did not, in terms, restrain any form of publication." The principal question considered and decided by the court was in respect to the character of the judgment that had been entered by the court. It was contended by the appellants that the proceeding was a civil or remedial contempt, and that contention was sustained by the court. It was also contended that the proper judgment to be entered in a civil contempt proceeding for the violation of a prohibitory injunction was a fine to be inflicted for the benefit of the complainant, which should be graduated to the nature and extent of the injury inflicted by the violation of the injunction, and this contention was sustained. The court in that case held that the fine, when collected in such case, was to be paid over to the complainant as compensation for the alleged injury. It was further held that while imprisonment to coerce the performance of an act required by the order of a court was proper, still imprisonment for a definite term, or indefinitely, would not be proper for the violation of a prohibitory injunction since such imprisonment could not be of any benefit to the complainant, and the judgment was reversed and the cause remanded without prejudice to the right of the Supreme Court of the District of Columbia to punish the defendants for a criminal contempt based upon a proper proceeding for that purpose. The opinion of the court proceeds on the theory that a civil contempt proceeding for the violation of a prohibitory injunction is a mere private remedy afforded to complainant, in which the dignity of the court and the public is not concerned.

As we have attempted already to show, in this jurisdiction a well defined distinction has been made between civil and criminal contempts, but this court has never gone to the extent of holding that a civil contempt was purely a private right of action in the party at whose instance the injunction was awarded. The law is well settled in this State that the fine imposed in such cases is so far regarded as a penalty that it is treated as other fines, and paid over, when collected, not to the complainant in the equity proceeding, but to the public. It has always been the practice in this State to impose a fine or a jail sentence for the violation of a civil or remedial injunction. The difference between the established practice in this State and the rule laid down by the United States Supreme Court in the *Gompers case* is apparent.

The appellants in the case at bar strenuously insist that since there is a clear conflict between the decision of the United States Supreme Court in the case cited and the decisions of this court, it is our duty, under the law, to overrule our own decisions and follow the rule laid down by the Federal Supreme Court. The decisions of that court are always entitled to great consideration and this court has never grudgingly yielded to them the deference which is due to so distinguished a tribunal, still, when its decisions conflict with those of this court upon questions over which this court has complete and final jurisdiction, it is our plain duty, under the law, to adhere to our own decisions. The constitution of the United States, the laws of Congress made in pursuance thereof, and treaties made under the authority of the United States, are by paragraph 2 of article 6 of the constitution of the United States made the "supreme law of the land" and are binding upon all the courts of all the States, anything to the contrary in the constitution or laws of a State notwithstanding. It follows necessarily from this constitutional provision, that where a suit in the State court involves a question aris-

ing under the constitution, laws or treaties of the United States, or, in other words, what is commonly called a "Federal question," a decision of the United States Supreme Court upon the point at issue is to be regarded as absolutely binding and authoritative, and in such case, if the Supreme Court of a State should entertain a different view, it will follow the Federal Supreme court, reversing and overruling, if necessary, its own previous decisions to the contrary. (*United States Land Ass'n* v. *Abrahams,* 208 U. S. 614; *Foss* v. *Johnstone,* 158 Cal. 119; *In re Opinion of the Justices,* 207 Mass. 601; *People* v. *Wemple,* 138 N. Y. 1; *Pennsylvania Railroad Co.* v. *Duncan,* 111 Pa. St. 352; *McInhill* v. *Odell,* 62 Ill. 169; *Black* v. *Lusk,* 69 id. 70.) A decision of the Supreme Court of the United States in a case taken to it on a writ of error from a State court because of a Federal question being involved is a binding precedent for the State courts not only in the case presented, but in any subsequent case based on essentially the same facts and involving the same question. (Black on Law of Judicial Precedents, 354.) But aside from questions arising under the constitution, laws or treaties of the United States, and in the field of general jurisprudence relating to the rights of persons and property, the jurisdiction and procedure of the courts and the general principles for the administration of justice at common law and in equity, the decisions of the United States Supreme Court, while entitled to the highest and most respectful consideration as the pronouncements of a most eminent and learned tribunal, are, as regards all such matters, only to be considered by the State courts as persuasive authority. In respect to questions of general law the State courts are required to follow the decisions of the highest court of the State and are not bound by the authority of the Supreme Court of the United States, and particularly is this true where it would be necessary to overrule previous State decisions in order to conform to the views of

the Federal court. (Black on Law of Judicial Precedents, 359, and cases there cited.) The case at bar involves merely a matter of procedure and the character of the judgment to be entered in a civil or remedial contempt matter, and belongs to that class of cases in which the established rules of the State courts are final and conclusive. It does not follow because there is a difference between the procedure approved by the Federal Supreme Court and that which exists in this State, that judgments entered in accordance with the established law and practice of the State courts are a denial of due process of law merely because the decisions of the Supreme Court of the United States would require a different procedure and the rendition of judgments in a different form. The due process clauses of the Federal constitution do not require that every judgment rendered by a State tribunal under which one may be deprived of life, liberty or property shall be in accord with the decisions of the Supreme Court of the United States, except in those cases wherein that court, under the constitution, is charged with the duty of declaring and expounding "the supreme law of the land." If the converse of this proposition be conceded it would destroy at once the independence of the State courts, and leave them without final jurisdiction in any matter wherein life, liberty or property was involved. "Due process of law" refers to that law of the land in each State which derives its authority from the inherent and reserved power of the State, exerted within the limits of those fundamental principles of liberty and justice which lie at the base of our civil and political institutions, and its greatest security lies in the right of the people to make their own laws and alter them at their pleasure. Any legal proceeding which provides for notice and a hearing, whether that proceeding owes its existence to ancient and uniform custom in the State wherein it is administered, or to some legislative act passed, in the discretion of the legislative power, in furtherance of the

public good, which regards and preserves those principles of liberty and justice, must be held to be due process of law. *Hurtado* v. *California,* 110 U. S. 516. .

Appellants' contention that they have been deprived of due process of law seems to be based on a misapprehension as to what constitutes due process of law under the State and Federal constitutions. Here the court had jurisdiction of the subject matter. The alleged violation of the injunction was brought to the attention of the court by the filing of a petition, in which the facts were fully stated. Appellants were notified and appeared and had a hearing touching the matters alleged, in the usual and ordinary manner in which such matters have uniformly been heard and disposed of under the established practice in this State. As was well said by this court in *Flannery* v. *People, supra,* on page 72 : "The trial was under the ordinary and usual forms of law. The contempt proceeding was instituted in conformity with the practice in such cases, and was in the only court which had the power to hear and punish appellants for the violation of its judgment and decree. Every element of due process of law is here shown. Perhaps the simplest definition of due process of law is, that it means in the due process of legal proceedings according to those rules and forms which have been established for the protection of private rights, and under this definition it can not be seriously contended, it seems to us, that appellants were deprived of their constitutional rights." The language above quoted applies with conclusive force to the contention of appellants in the cases at bar.

We find no error in these records, and the judgments in the several cases will accordingly be affirmed.

*Judgments affirmed.*