46        APPELLATE COURTS OF ILLINOIS.

O'Brien v. Int. Ladies' Garment Workers' Union, 214 Ill. App. 46.

James S. O'Brien et al., Appellees, v. International
Ladies' Garment Workers' Union et al. (Defend-
ants).

Ash-Madden-Rae Company et al., Appellees, v. Inter-
national Ladies' Garment Workers' Union et al.
(Defendants).

In the Matter of the Contempt of Sol Seidman,
Appellant.

Gen. No. 23,705.

1. INJUNCTION, § 253*—*what is proper procedure for civil.* A con-
tempt proceeding for the violation of a prohibitory injunction re-
straining defendants from certain strike activities is for the pun-
ishment of a civil contempt, and the procedure conforms to the
rules and practice applicable to other chancery proceedings so that
defendants cannot invoke the rules, applicable to criminal con-
tempts, that oral evidence cannot be admitted to support the charges
and that the sworn answers are sufficient to purge the respondents.

2. CONTEMPT, § 74*—*what not reviewed upon appeal from orders
for violation of injunctions.* Upon appeal from the orders in con-
tempt proceedings for the violation of injunctions issued in a pro-
ceeding in which the jurisdiction of the court issuing the injunction
is not questioned, the propriety of the injunction orders is im-
material and is not before the court for determination.

3. INJUNCTION, § 260*—*when punishment by imprisonment im-
proper.* A strike leader who commits a technical violation of an
injunctional order by advice given under an excusable misappre-
hension of the law as to peaceful picketing, but who ceases to offend
as soon as he is correctly informed, should not be punished by im-
prisonment, and an order of commitment will be reversed.

4. TRADE UNIONS—*what is duty of labor leader as to preventing
violation of injunction by members.* There is no legal duty upon a
labor leader to take whatever affirmative action may be possible to
prevent members of a union from violating an injunction.

HOLDOM, J., dissenting, DEVER, P. J., concurring specially.

Appeal from the Circuit Court of Cook county; the Hon. JESSE
A. BALDWIN, Judge, presiding. Heard in this court at the October
term, 1917. Reversed. Opinion filed April 7, 1919.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same
topic and section number.

O'Brien v. Int. Ladies' Garment Workers' Union, 214 Ill. App. 46.

DARROW & SISSMAN, for appellant; VICTOR S. YARROS, of counsel.

ROSENTHAL, HAMILL & WORMSER, for appellees in Ash-Madden-Rae Co. case.

LEWIS F. JACOBSON, for appellees in O'Brien case; CHARLES H. HAMILL and LEO F. WORMSER, of counsel.

MR. JUSTICE McSURELY delivered the opinion of the court.

This is an appeal from an order finding Sol Seidman, appellant, guilty of contempt of court in violating a strike injunction, and committing him to jail for a term of 75 days. There are eleven other appeals from similar orders arising out of the same general situation and proceedings, so that this preliminary statement will apply to each appeal.

In February, 1917, representatives of an organization of employees, called the International Ladies' Garment Workers' Union, presented to a number of manufacturers of women's garments, in Chicago, certain demands touching wages, hours of employment, sanitary conditions in shops, etc. The employers not responding, a strike was called on February 15th. On February 17th two bills were filed, on behalf of the employers, with the International Ladies' Garment Workers' Union, its local unions, a number of other labor organizations, and certain individuals, defendants. Pursuant to the bills injunctions were issued restraining defendants, among other things, from interfering with and hindering the employees of complainants, and from doing certain acts of affirmative violence; from watching complainants, their employees or applicants for work; from calling at their homes, or by promises of money or other employment to induce them to leave their employers, and from peaceful picketing.

48    APPELLATE COURTS OF ILLINOIS.

O'Brien v. Int. Ladies' Garment Workers' Union, 214 Ill. App. 46.

Placards posted in the strike district, special delivery letters and newspaper articles told substantially the terms of these injunctional orders.

On February 21st a petition was filed by the Ash-Madden-Rae Company and others, charging the appellant, Seidman, and other respondents with a violation of the injunctions, and praying for a rule to show cause why they should not be adjudged in contempt. Another similar petition was filed on February 23rd at the instance of James S. O'Brien and others, and another petition by the Ash-Madden-Rae Company on February 23rd. A fourth petition of similar tenor was filed February 28th. Sworn answers were filed by the respondents, denying the material allegations of the petitions. Afterwards the petitions were consolidated for hearing. Upon the trial the chancellor heard testimony in open court, and also evidence submitted by way of exhibits and affidavits. After such hearing the chancellor found certain of the respondents guilty of contempt, and ordered the imposition of penalties. Those thus punished include Seidman, the appellant in this case, and the eleven other appellants above referred to.

Before considering the facts involved in these several cases, some legal points applicable to all of them call for consideration. Appellants say these are criminal contempts; hence that they are entitled to the benefit of the rule that oral evidence cannot be admitted to support the charges, and that the sworn answers are sufficient to purge the respondents. It has been so held in *Gompers v. Buck's Stove & Range Co.*, 221 U. S. 418; but it has been definitely decided otherwise by the Supreme Court of our own State in *Rothschild & Co. v. Steger & Sons Piano Mfg. Co.*, 256 Ill. 196, where it was unequivocally announced that the rule in the *Gompers* case is different from the established rule in Illinois, which is that a contempt proceeding for the violation of a prohibitory injunction

such as this is for the punishment of a civil contempt; that the procedure, in its pleadings, character and quantity of proof required, conforms to the rules and practice applicable to other chancery proceedings. *Hake v. People*, 230 Ill. 174; *State Public Utilities Commission v. City of De Kalb*, 283 Ill. 443. This rule is so well settled in this State as no longer to admit of argument.

It is said that peaceful picketing is not unlawful in Illinois, and that the injunction prohibiting such picketing is void. We cannot in this proceeding pass upon the propriety of the injunction orders. This is not an appeal from the injunctions, and so far as we have been informed there have been no appeals from them. These appeals are from the orders in the contempt proceedings. It is the settled rule in this State that if the court has jurisdiction of the parties and the subject-matter, an injunctional order made in the exercise of such jurisdiction must be obeyed until it is modified or set aside by the court making it, or reversed in a direct proceeding by appeal or on error. *Leopold v. People*, 140 Ill. 552; *Clark v. Burke*, 163 Ill. 334; *O'Brien v. People*, 216 Ill. 354; *Franklin Union v. People*, 220 Ill. 355; *Christian Hospital v. People*, 223 Ill. 244. The jurisdiction of the Circuit Court is not questioned; hence the extended argument touching the validity of that part of the injunctions forbidding peaceful picketing is not material; that question is not before us for determination.

While we cannot here adjudicate upon the validity of any part of the injunctions, it is proper to refer briefly and partially to the decisions on the subject of peaceful picketing, as having a bearing upon the guilt of the various appellants and the extent of their punishment. Whether so-called peaceful picketing may be prohibited by the courts is the subject of variant opinions. A classic in juristic literature is the opinion by Mr. Justice Baker in *Iron Molders' Union*

50    APPELLATE COURTS OF ILLINOIS.

O'Brien v. Int. Ladies' Garment Workers' Union, 214 Ill. App. 46.

*v. Allis-Chalmers Co.*, 166 Fed. 45, where peaceful picketing is held to be the lawful exercise of the constitutional rights of the citizen, and not the subject of juridical inhibition. To the same effect are *Tri-City Central Trades Council v. American Steel Foundries*, 238 Fed. 728; *Karges Furniture Co. v. Amalgamated Woodworkers' Local Union, No. 131*, 165 Ind. 421; *Marx & Haas Jeans Clothing Co. v. Watson*, 168 Mo. 133. The decisions in Illinois seem to give approval to the opposite view, namely, that there can be no lawful peaceful picketing, and that injunctions forbidding it are valid. *Franklin Union No. 4 v. People*, 220 Ill. 355; *Barnes & Co. v. Chicago Typographical Union No. 16*, 232 Ill. 424; *Philip Henrici Co. v. Alexander*, 198 Ill. App. 568.

Considering now the particular case of the appellant, Sol Seidman, the evidence tends to show that he was vice president of the International Ladies' Garment Workers' Union, and had had considerable experience in New York City in connection with this and similar organizations. He came to Chicago in November, 1916, and became head of the local unions affiliated with the International Union. He was in charge of the strike in Chicago and gave orders with reference thereto, and appointed committees, including a "picketing committee." As above stated, this strike was called on February 15th, and on February 17th the injunctional orders in question were issued. The alleged violation by Seidman of these orders centers upon his speech at a meeting on the evening of February 20th. Several witnesses testified that at this time he stated that the strikers could picket in pairs, and that such picketing would not be in contempt of court; that the injunctional order as to peaceful picketing was not valid. In explanation of this it is said that Seidman was honestly of the opinion at that time that peaceful picketing in pairs was lawful; that in New York City, where he had had much experience in such

matters, such picketing was permitted, and protected by the police; that he believed the same regulations obtained in Chicago, and was advising in accordance with what he had reason to believe and honestly did believe was the law; that on the morning of the 21st, Seidman consulted with Chicago attorneys and was advised by them that peaceful picketing was illegal in this State, and that after having been so advised he never again told the strikers to continue picketing, but on the contrary told them that any such actions on their part would be at their own risk and that they would have to stand the consequences. Upon this showing Seidman was held to be in contempt and ordered committed to imprisonment in the Cook county jail for 75 days.

We find no support in the cases cited, of the proposition that there is a legal duty upon a labor leader to take whatever affirmative action may be possible to prevent members of a union from violating an injunction.

Under the law in this State and the facts and circumstances before the chancellor, it is evident that appellant was guilty of a technical violation of the injunction in the advice he gave at the meeting of February 20th. It is also evident that the violation was not intentional or wilful, and that he was advising in accordance with what he honestly thought was the law, and that as soon as he learned of his mistake he refrained from further offense. It is quite probable that a nonresident would not know that the decisions of the federal court of this district as to peaceful picketing were not in line with the decisions of our State courts, or that the law here was different from that of the State of his previous experience. The question then is, should a citizen be imprisoned because of his advice given under such excusable misapprehension of the local law, where he ceases to offend as soon as he is informed?

52    Appellate Courts of Illinois.

O'Brien v. Int. Ladies' Garment Workers' Union, 214 Ill. App. 46.

In *Dinet v. People,* 73 Ill. 183, it was held that while a court has power to commit for contempt in not complying with its decree, it is not proper to imprison unless the failure to obey the decree is wilful, the opinion saying, in substance, that the liberty of the citizen cannot be taken away under such circumstances. The principle recognized is that where failure to obey the order of the court arises from an honest misconception of its true construction, and not from an intent to bid defiance to it, it is unconscionable to deprive a person of his liberty. This case was cited with approval in the recent decision in *Illinois Malleable Iron Co. v. Michalek,* 279 Ill. 221. The general rule is thus stated in Cyc. vol. 9, page 57, and supported by a large number of citations:

"Unless limited by statute, the extent of punishment is discretionary with the court, but it must not be excessive. In determining the amount of punishment to be imposed the court will take into consideration all surrounding facts and circumstances. Where a party is in contempt through a misapprehension of his duties, or where it results from a mistake and a reasonable excuse is presented to the court, ordinarily the party will be discharged upon the payment of the costs and expenses of the proceeding."

Moved by this principle, a majority of this court is of the opinion that the penalty of imprisonment is excessive under the circumstances. In these times, when action moves faster than our thinking, a sound discretion suggests that the disposition of the citizen to act lawfully should have great weight. Punishment by imprisonment should not have been imposed, and the order of commitment is therefore reversed.

*Reversed.*

Mr. Justice Holdom dissents.
Mr. Presiding Justice Dever specially concurs.

Dissenting opinion of Mr. Justice Holdom.
I concur in the conclusion in Mr. Justice McSurely's

opinion that Seidman was guilty of contempt of court in violating the injunctional order. However, I most emphatically disagree with the conclusion that the respondent should not be punished for such contempt. He not only does not deny that he knew the terms of the injunctional order forbade picketing, but admits that he had such knowledge. His attitude was , that the injunction against picketing was not binding upon him or any of the defendants because it was contrary to the law on that subject in the State of New York, where he had had large experience in such matters. His attitude was, by interpretation, that he would depend upon his own knowledge of the law regarding picketing and disobey the injunction restraining such action.

Seidman came to Chicago from New York in November, 1916. He was then vice president of the International Garment Workers' Union. February 15, 1917, a garment workers' strike was called in Chicago and Seidman took charge of that strike. There was much picketing indulged in, some of it far from a peaceful nature, as appears from other opinions in other cases coincidently filed with the one in this case, involving serious assaults, for which some of the perpetrators were punished by the chancellor and the convictions affirmed in such opinions. However, a claimed ignorance of the law in Illinois regarding picketing is received as sufficient excuse for advocating such picketing, and as also sufficient to relieve Seidman from punishment for his contemptuous conduct. The opinion admits that picketing is unlawful in Illinois, although in New York peaceful picketing, so-called, the law tolerates.

Seidman in his defiance of the injunction relied upon his knowledge of "picket law" in New York. As ignorance of the law excuses no man, it is hard for me to understand why Seidman, because he came from New York, should be deemed a privileged character

54. APPELLATE COURTS OF ILLINOIS

O'Brien v. Int. Ladies' Garment Workers' Union, 214 Ill. App. 46.

and immune from punishment for violating an Illinois injunction against picketing, of the purport of which injunction he had actual knowledge. But it is held that this condition of mind of Seidman showed a lack of intent on his part to violate the injunction, notwithstanding he had knowledge of its purport and effect. He set himself up as a court of review of the chancellor's order and on such review held that the chancellor was in error and had no jurisdiction to enjoin picketing, and so proceeded to advise that no attention should be paid to the court's order and that all concerned should go ahead and picket with impunity. When Seidman discovered, according to his own story, that the chancellor knew the law of Illinois regarding picketing and that he himself did not, that the restraining order was lawful and that his judgment to the contrary was wrong, what did he do? Tell the strikers that picketing was unlawful and that the injunction should be obeyed and picketing cease? No! He simply told the strikers that if they continued picketing they did so at their own risk. Can this be construed into a conscious obedience of the injunction? He never said one word to discourage the strikers from picketing. After he admittedly knew that such picketing was unlawful he failed to advise the strikers to obey the injunction and cease picketing. As a result of his advice the picketing continued as actively after he was informed that picketing was unlawful in this State as before he had such knowledge. There is no evidence in this record of Seidman's saying one word or doing one act indicating any effort or purpose either to himself heed the injunction or procure any of the strikers to do so.

Seidman was the ringleader of the strikers, from whom the strikers drew their inspiration in committing unlawful acts and in daily violating the injunction. He maintained the industrial warfare which then existed. He flouted and defied the injunctional

order both before and after the time he admits he knew the order was lawful and binding upon all upon whom by its terms it operated. His conduct and attitude towards the injunction were in wilful disobedience of it. His example and precept caused other strikers to violate it. When he violated the injunction with knowledge of what it enjoined, he was guilty of a contempt of court. As the principal offender he was, in my judgment, deserving of the punishment which the chancellor meted out to him.

It is subversive of good order and the peace of the community to permit Seidman to escape the natural consequence of his premeditated and intentional conduct in defying the injunctional process of the court and to set up his judgment in definance of the court's order. To allow him to escape punishment on his specious plea is in effect an invitation to nonresident ruffians to come to this jurisdiction to manipulate strikes and flout the law of this forum with impunity, thereby relieving the resident strike manager from all duties, responsibilities and privileges in this regard. Such holding blazes a new path in industrial warfare.

It is my opinion that Seidman has failed to show any legal reason or excuse for his contumacious conduct, and that therefore the sentence appealed from should be affirmed.

MR. PRESIDING JUSTICE DEVER specially concurring in the majority opinion.

In indicating my concurrence in the views expressed by Mr. Justice McSurely in the majority opinion of the court, I desire to emphasize what is said therein with reference to the injunctional order for the violation of which the chancellor imposed jail sentences in each of the several cases before us.

The order goes much further in imposing restraints upon persons intended to be affected thereby than any other that my attention has been directed to. The de-

fendants were restrained "from watching or spying upon complainants or their employees or applicants for work," from following employees "or calling at their homes to induce them to leave their employment," "from attempting by payment or promise of money, employment, etc., to induce employees of complainants to quit," and "from attempting to induce employees of complainant to refuse to do their work," etc.

No appeal was taken from the entry of this order, and the question of its sufficiency is not before us. Seidman, the defendant, however, in view of certain provisions of the order, might have had some reason for his apparent belief that the order, at least as to such provisions, was illegal.

I can find nothing in the record that supports the statement in the dissenting opinion that Seidman was a "ringleader" or that he "maintained the industrial warfare which then existed." He did not, so far as the evidence shows, either flout or defy the order after the time he was informed by his counsel that picketing was unlawful in the State of Illinois, nor was his conduct or attitude towards the order in wilful disobedience of it.

The evidence does disclose that Seidman was vice president of the International Ladies' Garment Workers' Union and that he was a nonresident of the State of Illinois. Neither these facts nor anything in the record warrants the epithet "nonresident ruffians" impliedly applied to him. The evidence shows that Seidman immediately after he was informed that the injunctional order, so far as it restrained picketing, was legal in this State, "told the strikers that the injunction prohibited picketing, and that if they did picket, they would do so on their own account and have to stand the consequences."