OAKLAND COAL COMPANY *v.* WILSON.

[No. 24,284.  Filed October 7, 1925.]

1.  CONTEMPT.—*Coal company's disobedience of injunction as to discharge of water from mine not direct contempt.*—A coal company's disobedience of injunction forbidding the pumping and discharge of water from its mine would not constitute a direct contempt. p. 505.

2.  CONTEMPT.—*Statute as to indirect contempts merely declaratory of the common law.*—Section 1083 Burns 1926, §1047 Burns 1914, Acts 1879 p. 114, regulating the procedure in case of indirect contempts of court, is merely declaratory of the common law. p. 505.

3.  CONTEMPT.—*Proceeding for indirect contempt must be based on affidavit specifically stating the facts constituting contempt.*—A proceeding against a party for an indirect contempt of court must be commenced by either a rule to show cause or by an attachment, and such rule or attachment should not be

issued except on affidavit specifically stating the facts consti-
tuting the contempt. p. 505.

4. CONTEMPT.—*Contempt proceedings are sometimes resorted to
for purpose of enforcing private rights.*—Contempt proceedings
are sometimes resorted to for the purpose of enforcing private
rights, where the court has made an order concerning them,
as distinguished from vindicating the authority of the court
and punishing the offender. p. 505.

5. CONTEMPT.—*Contempt statute does not limit or control pro-
ceedings for the enforcement of civil rights and remedies.*—By
its express terms, the statute regulating the procedure in in-
direct contempts (§1085 Burns 1926, §1049 Burns 1914, Acts
1879 p. 114) does not limit or control "any proceeding for
contempt for the enforcement of civil rights and remedies."
p. 507.

6. CONTEMPT.—*Contempt proceeding held one to punish for past
offense in violating injunction, and not for enforcement of civil
rights.*—A proceeding against a coal company charging the dis-
obedience of an injunction forbidding the pumping of water
from its mine and discharging it on the lands of plaintiff, in
which the plaintiff sought and obtained the imposition of a
penalty for a past offense, was not merely for the enforcement
of civil rights nor to obtain redress by civil remedies. p. 507.

7. CONTEMPT.—*Affidavit charging indirect contempt held insuf-
ficient.*—Affidavit charging indirect contempt of court by a
coal company in violating an injunction forbidding the pump-
ing and discharging of water on plaintiff's land, *held* insuffi-
cient. p. 508.

From Gibson Circuit Court; *Simon L. Vandeveer,*
Special Judge.

Action by Heber D. Wilson against the Oakland Coal
Company. From a judgment for plaintiff, the defend-
ant appeals. *Reversed.*

*Duncan & Duncan* and *Orbison & Zechiel,* for appel-
lant.

*U. S. Lesh,* Attorney-General, *Connor D. Ross,* Dep-
uty Attorney-General and *C. O. Baltzell,* for appellee.

EWBANK, J.—Appellant was adjudged guilty of a con-
tempt of court and sentenced to pay a fine of $500 and
the costs of prosecution. The proceeding was com-
menced by filing in the Gibson Circuit Court, on Sep-

tember 23, 1922, an affidavit which was entitled "Heber D. Wilson v. The Oakland Coal Company," and averred, in substance, that on May 23, 1922, "plaintiff procured a judgment and restraining order in said court," a copy of which was recited in full in the affidavit, by which the court "adjudged that the defendant be and is hereby now permanently enjoined from pumping to the surface of plaintiff's lands through water holes number 1 and 2 any water that first appears in said mine in vein number 5 on lands other than the lands of the plaintiff described in his complaint herein. That the defendant be and now is here enjoined from emptying any water pumped from said mine through water hole number 1 into the old channel of Keg creek, and that the defendant be and now here is permanently enjoined from pumping water through either of said water holes to the surface of the plaintiff's land after all the coal more than sixty feet below the surface of the plaintiff's land has been mined by the defendants"; but alleged that, in disobedience thereof, said defendant "has continued to pump water from what was designated as well No. 1 into the old Keg creek ditch, and that said defendant has continued to pump water through both of said wells described in the original complaint hereof and as set out in said order from under lands adjacent to the lands owned by this plaintiff as described in the foregoing order."

But the affidavit did not describe nor indicate the location of any lands so referred to, only mentioning them as "lands of plaintiff described in his complaint herein," and as "other lands," or as "lands adjacent to the lands of this plaintiff," without stating in what section, township, range, county or state any of them were situated. And it did not indicate the location of "water holes numbered 1 and 2," nor of "well No. 1," nor indicate what, if any, relation there was

between the "water holes" and the "wells." And it did not in any manner describe nor give the location of "the old channel of Keg creek" nor "the old Keg creek ditch," nor indicate what relation, if any, the "old channel" bore to the "ditch." It did not charge that any of the water pumped by defendant had been pumped "to the surface of plaintiff's land," but, so far as appears from the affidavit, such water may have been pumped into pipes or tile (as a witness testified at the hearing), which may have been laid beneath the surface, and the water may have been discharged from the tile at a place not on his land. And it was not averred that in pumping water "from the lands adjacent to the lands owned by plaintiff" appellant had pumped any "water that first appeared in said mine in vein number 5 on lands other than the lands of plaintiff." And no attempt was made to charge that all the coal more than sixty feet below the surface had been mined from under plaintiff's land, or that any water had been pumped after the coal was so taken out. The place where the acts complained of were alleged to have been done was not stated, except as being on plaintiff's lands, and the time was not stated, further than by indicating the date when the injunction was granted, four months before, and alleging that defendant had refused to obey it and had continued to pump the water, as above stated.

A rule was entered in general terms, requiring appellant to appear and "show cause why he (it) is not in contempt of court by refusing to obey said order." Appellant moved to discharge the rule for the reason, among others assigned, that the petition "does not state facts sufficient to constitute a cause of action," and reserved an exception to the order overruling its motion. Answers were filed, and after a hearing, the court found appellant "guilty of a contempt of this court as charged in said verified information," and sentenced it to pay

a fine of $500. A series of motions to modify the judgment having been made and overruled, an appeal was duly perfected.

Overruling the motion to discharge the rule because of alleged failure of the petition to state facts sufficient to constitute a cause of action is the first error

1. assigned. The alleged failure and refusal to obey the order of court did not occur in the immediate presence of the court nor so close to where it was sitting as to interrupt or disturb its proceedings, but constituted, at most, an indirect contempt. §1078 Burns 1926, §1042 Burns 1914, §1007 R. S. 1881, §3, Acts 1879 p. 112.

It is provided by statute that: "in all cases of indirect contempt the person charged therewith shall be entitled, before answering thereto or being pun-

2-4. ished therefor, to have served upon him a rule of the court against which the alleged contempt was committed; which said rule shall clearly and distinctly set forth the facts which are alleged to constitute such contempt, and shall specify the time and place of such facts with such reasonable certainty as to inform the defendant of the nature and circumstances of the charge against him. * * * No such rule as hereinbefore provided for shall ever issue until the facts alleged therein to constitute such contempt shall have been brought to the knowledge of the court by an information, duly verified by the oath or affirmation of some officer of the court or other responsible person." §1083 Burns 1926, §1047 Burns 1914, §1012 R. S. 1881, §8, Acts 1879 p. 114. Counsel for appellee do not contend that either the verified information or the rule to show cause in this case did set forth the facts alleged to constitute the contempt, clearly, distinctly or intelligibly, or that either of them specified the time or place of such acts with certainty or at all. But they take

the position:    (1) That since the information charged disobedience of an order of the court made in a civil action the title of which was indorsed on the information, the court had judicial knowledge of its record containing the decree of injunction and of the facts shown by that record; and (2) that since the information merely charged appellant with having violated private rights of an individual litigant by disobeying an injunction issued for the protection of his property, and did not allege that he had disobeyed a decree in the enforcement of which the general public had an interest, the statute quoted above has no application.    But the statute is merely declaratory of the common law, as repeatedly laid down by decisions of the Supreme Court of Indiana before it was enacted.    *Whittem* v. *State* (1871), 36 Ind. 196, 213; *McConnell* v. *State* (1874), 46 Ind. 298, 300; *Wilson* v. *State* (1877), 57 Ind. 71, 72, 73.

In each of the cases cited, it was expressly declared that "the proceeding against a party for a constructive contempt must be commenced by either a rule to show cause, or by an attachment, and such rule should not be made or attachment issued, unless upon affidavit specifically making the charge." *Wilson* v. *State, supra,* citing authorities.    And our Code of Civil Procedure requires that a civil action shall in all cases be commenced by filing a complaint in writing (§332 Burns 1926, §317 Burns 1914, §314 R. S. 1881), which shall contain "a statement of the facts constituting the cause of action, in plain and concise language." §359 Burns 1926, §343 Burns 1914, §338 R. S. 1881.

It is true that proceedings for contempt of court are sometimes resorted to for the purpose of enforcing private rights, as distinguished from vindicating the authority of the court and punishing the offender.    Thus, a refusal to pay an allowance for the support of a wife

and children, or to surrender property to a receiver, or to execute a conveyance, or to deliver possession, in accordance with a decree of a competent court, might constitute a contempt for which the offending party might be committed until he should comply with the order. In such a case, the party in contempt may be held under restraint indefinitely, so long as he refuses to obey the court's order, but a compliance with the order will entitle him to his discharge, so that he "carries the key to his prison in his own pocket." *In re Nevitt* (1902), 117 Fed. 448, 54 C. C. A. 622; *Rothschild & Co.* v. *Steger Piano Co.* (1912), 256 Ill. 196, 201, 99 N. E. 920, 42 L. R. A. (N. S.) 793, Ann. Cas. 1913E 276; *Gompers* v. *Bucks Stove Range Co.* (1911), 221 U. S. 418, 442, 31 Sup. Ct. 492, 55 L. Ed. 797, 34 L. R. A. (N. S.) 874. And in some instances, where the court has statutory authority to render such a judgment, damages are awarded in favor of the party injuriously affected by the failure to obey an order of court, instead of a judgment imposing a penalty by way of fine or imprisonment, though we know of no such statute in Indiana. *Swift* v. *State, ex rel.* (1878), 63 Ind. 81; *Campbell* v. *Justices* (1905), 187 Mass. 509, 73 N. E. 659, 69 L. R. A. 311, 2 Ann. Cas. 462; 13 C. J. 89.

By its express terms, the statute cited does not limit or control "any proceeding against any officer or party for contempt for the enforcement of civil rights and remedies." §1085 Burns 1926, §1049 Burns 1914, §1014 R. S. 1881. But, in the case at bar, the petitioner did not seek a civil remedy, by way of compelling appellant to do or to desist from doing something previously ordered, or by way of recovering damages for an act or omission in violation of what the court had commanded. He sought and obtained a decree imposing a penalty for a past offense which, it would seem from the evidence introduced at the hear-

ing, had been fully accomplished and was no longer being committed at the time the judgment appealed from was entered. And the judgment so entered did not ascertain the amount of petitioner's damages and require them to be paid, nor adjudge a penalty in the alternative, to be enforced only in case the failure to obey the injunction should be persisted in. And whereas the first paragraph of the complaint in the original action in which the injunction was issued alleged that the two "water holes" had been wrongfully operated by pumping water therefrom "for more than two years last past," and the finding of the court in that case was "for the plaintiff on the first paragraph of his complaint," yet the court only found that he was thereby damaged $25, and gave judgment only for that amount. But in the case at bar, upon the charge of disobeying an injunction at some time or times within a period of four months after the judgment was rendered, by continuing to do what had been done before, a fine of $500, payable to the school fund, was imposed. These facts show that this is a proceeding to punish the defendant for past disobedience, and not merely to enforce civil rights or to obtain redress by civil remedies. We are not to be understood to hold that if it were a proceeding for the enforcement of civil rights and remedies, though in form for indirect contempt, an affidavit would be sufficient which failed specifically to state the facts on which the charge was based. But since it is not a proceeding of that character, we decide nothing as to the kind of affidavit which would be required if it were.

The affidavit did not state facts sufficient to constitute a cause of action of the kind sought to be alleged, and the motion to discharge the rule should have 7. been sustained. The judgment is reversed, with directions to sustain appellant's motion to discharge the rule to show cause.