JACOB KAUK, Plaintiff-Appellant, *v.* DAN C. MATTHEWS, JR., *et al.*, Defendants.—(BARBER-GREENE COMPANY, Respondent-Appellee.)

Second District   No. 80-800

Opinion filed September 3, 1981.—Rehearing denied October 19, 1981.

Donald C. Marcum, of Truemper, Ward, Hollingsworth & Wojtecki, of Aurora, for appellant.

William C. Murphy, of Reid, Ochsenschlager, Murphy & Hupp, of Aurora, for appellee.

Mr. JUSTICE REINHARD delivered the opinion of the court:

This appeal arises from an order entered by the trial court denying plaintiff certain relief against a third party respondent employer rendered during the course of supplemental proceedings pursuant to section 73 of the Civil Practice Act (Ill. Rev. Stat. 1979, ch. 110, par. 73) to enforce a judgment for past-due rent.

Plaintiff, Jacob Kauk, filed a complaint pursuant to the Illinois forcible entry and detainer statute against Dan Matthews (judgment debtor). The court entered judgment against the judgment debtor ordering a return of the rented premises and payment of $460 representing past-due rent. Subsequently, in order to enforce the money judgment, a

citation to discover assets was served upon the judgment debtor's employer, Barber-Greene Company, respondent herein. The citation required Barber-Greene to refrain from transfering any money which might become due the judgment debtor and to appear before the court and produce records of all the payroll checks issued to the judgment debtor in the year 1980. The citation hearing was delayed three times on plaintiff's motions for continuances, and the record does not disclose that an appearance was ever entered by Barber-Greene. However, while Barber-Greene did supply plaintiff's counsel with the material requested on the face of the citation, it failed to withhold any funds due the judgment debtor from his paycheck. Counsel for plaintiff then contacted Barber-Greene's general accounting manager, Mr. Kenneth Klomhaus, requesting a withholding of an amount from the judgment debtor's gross pay and stating that a refusal to do so might subject Klomhaus to the contempt power of the court. Klomhaus, on the advice of counsel, still refused to withhold any of the judgment debtor's wages.

As a result, counsel for plaintiff appeared in court on September 17, 1980, and requested an order holding Barber-Greene liable for the amounts not deducted and an issuance of a rule to show cause why Klomhaus and Barber-Greene should not be held in contempt of court. Counsel for Barber-Greene was also present. The court heard oral argument from the parties and denied both of plaintiff's requests. However, the court ordered Barber-Greene to begin to deduct amounts from the judgment debtor's paychecks upon receipt from plaintiff of a garnishment summons.

Plaintiff has elected not to proceed with a garnishment under the Wage Deduction Act and appeals the court's decision to disallow his proposed use of the citation proceedings. In its brief, Barber-Greene concedes that it has at all times been willing to accept and comply with a wage garnishment summons and that it has not yet commenced wage deduction due to plaintiff's insistance on using the citation procedure.

The issue in this case is whether the Wage Deduction Act (Ill. Rev. Stat. 1979, ch. 62, par. 71 *et seq.*) is the sole and exclusive means of attaching a judgment debtor's wages in order to satisfy a judgment. Since there is a virtual absence of case law on this precise issue, an examination of the Wage Deduction Act and the supplemental proceedings (hereinafter citation proceedings) under the Civil Practice Act (Ill. Rev. Stat. 1979, ch. 110, par. 73) is necessary in order to ascertain the intent of the legislature.

The General Assembly first enacted the citation procedure statute in 1941. The municipal courts of Chicago had used a similar procedure for many years prior to the enactment of the statute (Ill. Rev. Stat., ch. 37, par. 424 (repealed 1963)), and the creditor's bill was an available pro-

cedure also. The citation to discover assets procedure as initially enacted was, however, somewhat limited in its utility. Courts interpreted the statute as not granting them the power to prevent the transfer of assets owed to the judgment debtor found in the hands of a third party. (Ill. Ann. Stat., ch. 110, par. 73, Historical and Practice Notes, at 400 (Smith-Hurd 1968).) Thus, the use of the statute was basically limited to a discovery device. However, a 1955 amendment greatly enhanced the effectiveness of the procedure. (Ill. Laws 1955, §1, at 2238, eff. Jan. 1, 1956.) The present-day statute now provides not only for the discovery of assets and income but also grants the court power to compel the party cited to apply the discovered assets toward payment of the underlying judgment. A synopsis of the citation procedure is provided in the statute's first sentence:

> "A judgment creditor, or his successor in interest when that interest is made to appear of record, is entitled to prosecute supplementary proceedings for the purposes of examining the judgment debtor or any other person to discover assets or income of the debtor not exempt from execution, a deduction order or garnishment, and of compelling the application of non-exempt assets or income discovered toward the payment of the amount due under the judgment." Ill. Rev. Stat. 1979, ch. 110, par. 73(1).

The Wage Deduction Act was first enacted in 1961 by an amendment to the Garnishment Act. (Ill. Laws 1961, at 1470, eff. July 1, 1961.) The amendment's effect was to create two separate garnishment procedures where previously wage garnishment came within the Garnishment Act. Sections 33 through 52 provide the garnishment procedure for all property other than wages, and sections 71 through 88 apply only to wages. Although the two acts are substantially similar in their provisions, the 1961 amendment made two significant changes. The amendment abolished the necessity of a written demand where the subject of the garnishment was wages (Ill. Rev. Stat. 1979, ch. 62, par. 82), and it changed the wage exemption from a fixed sum per week to 85 percent of gross wages earned during a maximum 30-day period. (Ill. Rev. Stat. 1979, ch. 62, par. 73, as amended by Pub. Act. 80-724, §1.) The intention of the General Assembly in creating a separate procedure for the garnishment of wages has been interpreted in the following manner:

> "It is obvious that in enacting the legislation relating to wage deductions, the General Assembly intended that the procedures be simplified, the costs held to a minimum, and the employee given every possible protection against harassment." *Libby Furniture & Appliance Co. v. Nabors* (1967), 86 Ill. App. 2d 381, 385, 230 N.E.2d 28.

Also in 1961, the legislature amended subsections (1), (2), (4)(a), and

(9) of the citation procedure to correspond to the separation of the Wage Deduction Act from the Garnishment Act. (Ill. Laws 1961, §1, at 1445, eff. June 7, 1961.) The amendment, which inserted the words "a deduction order" in each of these subsections, plainly exhibits the legislative intent to interrelate the provisions of the citation procedure with those of the Wage Deduction Act.

The citation procedure allows the judgment creditor to summon into court "the judgment debtor or any other person to discover assets or income of the debtor not exempt from execution, a deduction order or garnishment." (Ill. Rev. Stat. 1979, ch. 110, par. 73(1).) The words "any other person" and "income" clearly indicate that the judgment debtor's employer is within the class of persons which may be summoned into court and examined pursuant to the citation procedure.

■■ However, the statute later provides that once assets or income of the judgment debtor have been discovered, the court may "[e]nter any order upon or judgment against the person cited that could be entered in any garnishment proceeding." (Ill. Rev. Stat. 1979, ch. 110, par. 73(2)(d).) The question now becomes whether "any garnishment proceeding" includes a wage deduction order pursuant to the Wage Deduction Act. We conclude that it does.

The history of the Wage Deduction Act and the act's similarity to the Garnishment Act demonstrate that wage deductions are but a special category in the more general class of garnishments. Our supreme court has stated that "[a] wage-deduction proceeding is an action in garnishment, a statutory proceeding unknown to the common law. [citation]" (*First Finance Co. v. Pellum* (1975), 62 Ill. 2d 86, 91, 338 N.E.2d 876.) Additionally, it would be illogical for the statute to provide that employers may be summoned into court in order to discover income owed to the judgment debtor but to fail to provide the court with the power to order the employer to apply the nonexempt portion of the income toward the payment of the underlying judgment. Such an interpretation would be contrary to the stated purpose of the statute to provide an efficient and expeditious remedy by which a judgment creditor may discover assets and have his judgment satisfied in one proceeding. Ill. Ann. Stat., ch. 110, par. 73, Joint Committee Comments, at 398 (Smith-Hurd (1968).

Respondent argues that section 1 of the Civil Practice Act (Ill. Rev. Stat. 1979, ch. 110, par. 1) restricts the applicability of that Act with respect to garnishment proceedings in view of the following language:

> "The provisions of this Act apply to all civil proceedings except in attachment, ejectment, eminent domain, forcible entry and detainer, garnishment, habeas corpus, mandamus, ne exeat, quo warranto, replevin, foreclosure of mortgages or other proceedings in which the procedure is regulated by separate statutes. In all

those proceedings the separate statutes control to the extent to which they regulate procedure, but this Act applies as to matters of procedure not so regulated by separate statutes. As to all matters not regulated by statute or rule of court, the practice at common law prevails."

A complete reading of that section, however, indicates that the garnishment statute and other enumerated statutes control only "to the extent to which they regulate procedure, but this Act applies as to matters of procedure not so regulated by separate statutes." While the Garnishment Act does prescribe special procedures, for example, whereby summons is issued and interrogatories answered thereby preempting the Civil Practice Act provision, nowhere does it state that such act is the sole and exclusive remedy available to reach a debtor's assets in the hands of his employer. Both the Garnishment Act and section 73 are creatures of statute and the setting of their dimension is a matter for the legislature. (See *Taylor v. Taylor* (1969), 44 Ill. 2d 139, 144, 254 N.E.2d 445.) Had the legislature intended the Garnishment Act to be the exclusive remedy, we believe it would have expressly so provided.

Our interpretation of section 73 is consistent with previous court decisions which hold that, in view of section 4 of the Civil Practice Act (Ill. Rev. Stat. 1979, ch. 110, par. 4), citation proceedings are to be construed liberally rather than strictly. (*Fischer v. Kellenberger* (1979), 73 Ill. App. 3d 550, 553, 392 N.E.2d 733; *Celano v. Frederick* (1964), 54 Ill. App. 2d 393, 401, 203 N.E.2d 774.) The summary of the trial court's powers under section 73 discloses liberal court authority in dealing with the question of collection of judgments. (*North Bank v. F. & H. Resources, Inc.* (1977), 53 Ill. App. 3d 950, 953, 369 N.E.2d 174.) The Joint Committee Comments to subsection (2) of the statute recite that the trial court has "broad powers to compel, in a summary manner, the application of assets and income discovered to payment of the judgment or decree." (Ill. Ann. Stat., ch. 110, par. 73(2), Joint Committee Comments, at 399 (Smith-Hurd 1968).) And, in section 73(8) the legislature clearly expressed their intent that section 73 proceedings are in addition to existing enforcement methods:

"This section is in addition to and does not affect enforcement of judgments or proceedings supplementary thereto, by any other methods now or hereafter provided by law."

However, we do not imply that proceedings under section 73 were intended to totally supplant the Wage Deduction Act. Subsection (2) provides "[w]hen the assets or income of the judgment debtor not exempt for execution, a deduction order or garnishment are discovered, the court *may*, by appropriate order or judgment * * *." (Emphasis added.) The use of the word "may" indicates that the court, and not the judgment

creditor, has the discretion to ascertain the order or judgment it deter-mines is most appropriate in compelling distribution of the discovered assets.

Although section 73 authorizes the court to compel the party cited to apply nonexempt assets toward payment of the judgment, the statute's primary aim is to provide creditors with a means of discovering hidden assets. In contrast, wage garnishment procedures are typically appropri-ate when the judgment creditor is aware of the identity of the debtor's employer and there is no need for use of a discovery device.

The most revealing statement on this issue is contained in the His-torical and Practice Notes in section 73. That comment provides:

"The citation to discover assets procedure prescribed by section 73 and rule 277 is an extraordinary remedy, essentially equitable in character, intended to reach recalcitrant or dishonest debtors who are able but unwilling to satisfy in part or in whole judgments or decrees against them.

The practice is not to be used as a club to attempt to bludgeon a judgment debtor into settlement of judgments or decrees which he is without property to pay. *Nor should it be used to deal with assets which are known to the judgment creditor and can be reached by ordinary execution.*" (Emphasis added.) (Ill. Rev. Stat., ch. 110, par. 73, Historical and Practice Notes, at 401 (Smith-Hurd 1968).)

Although a wage deduction order is not "ordinary execution," the import of the above-quoted statement is equally applicable. A wage garnishment should usually suffice when the judgment creditor is aware of the source of the debtor's income.

The possibility for harassment of third party citation respondents in another context was noted by the court in *Celano v. Frederick* (1964), 54 Ill. App. 2d 393, 203 N.E.2d 774. In discussing Supreme Court Rule 277 (formerly Rule 24), which defines the procedure to be followed in con-ducting citation proceedings, the court stated:

"Rule 24 requires all parties cited to appear for examination before the court, master, notary, etc., and to produce books and records concerning property or income of the debtor. (Par. (3).) That this could cause undue hardship is recognized in the rule itself when it directs the court to control the proceedings 'to the end that the rights and interests of all parties and persons involved may be protected and harassment avoided.' (Par. (5).) Further, a second or subsequent supplementary proceeding with respect to the same judgment may not be commenced without leave of court, and then only upon a showing under oath that the creditor is acting in good faith 'and not to harass the judgment debtor or third party.' (Par. (1).) Paragraph (4) also protects a third party from being com-

pellèd to appear in an inconvenient forum." 54 Ill. App. 2d 393, 403 n.5.

Citation proceedings require the party cited to appear in court for a hearing on the existence and location of the judgment creditor's assets. The judgment creditor may examine the judgment debtor himself or "any third party the judgment creditor believes has property of or is indebted to the debtor." (Ill. Rev. Stat. 1979, ch. 110A, par. 277(a).) However, in a wage deduction proceeding, there is ordinarily no need for a court appearance and the judgment creditor will have no opportunity to personally examine the debtor as to the existence of assets. The primary discovery device available in a wage deduction proceeding is the use of written interrogatories served on the employer. (Ill. Rev. Stat. 1979, ch. 62, par. 74.) Thus, the Wage Deduction Act recognizes the need not to inconvenience employers during the course of an ordinary wage garnishment. Obviously, a wage garnishment proceeding is better suited to the use of written interrogatories than a full scale hearing when the identity of the employer is known to the judgment creditor and there is no question as to hidden assets. Thus, though the judgment creditor has clear statutory authority under section 73 to summon an employer into court to discover assets, the trial judge pursuant to Supreme Court Rule 277 controls the proceedings to protect the rights and interests of all parties and to avoid harassment, and retains the discretion, subject to any abuse thereof, as to the appropriate order by which it may compel application of discovered assets.

The record in this case indicates that the court below felt that citation proceedings could never be used in a situation where a wage garnishment under the Wage Deduction Act would apply. Since this is an erroneous view, we reverse and remand for further proceedings consistent with this opinion.

As this matter will be remanded for further proceedings, we will address plaintiff's other two contentions as they may arise again below and the record contains all the necessary facts for our resolution herein.

■■ Plaintiff contends that it was error for the court not to issue a rule to show cause against respondent Barber-Greene or its accounting manager, Kenneth Klomhaus, and it was error not to hold Barber-Greene liable for the amount of the underlying judgment. Plaintiff bases this contention on Barber-Greene's failure to withhold wages from its employee's salary in alleged violation of the notice provision contained in the citation. Section 73 clearly provides the court with power to hold in contempt or hold liable for the amount of the judgment third parties who violate a provision of the citation:

> "The citation may prohibit the party to whom it is directed from making or suffering any transfer or other disposition of, or inter-

fering with, any property not exempt from execution, a deduction order or garnishment, belonging to the judgment debtor or to which he may be entitled or which may thereafter be acquired by or become due to him, and from paying over or otherwise disposing of any moneys not so exempt which are due or to become due to the judgment debtor, until the further order of the court or the termination of the proceeding, whichever occurs first. * * * The court may punish any party who violates the restraining provision of a citation as and for a contempt, or if he is a third party may enter judgment against him in the amount of the unpaid portion of the judgment and costs allowable under this section, or in the amount of the value of the property transferred, whichever is lesser." (Ill. Rev. Stat. 1979, ch. 110, par. 73(4)(a).)

Further implementation of the court's authority to impose sanctions is contained in Supreme Court Rule 277(h):

"Any person who fails to obey a citation, subpoena, or order or other direction of the court issued pursuant to any provision of this rule may be punished for contempt. Any person who refuses to obey any order to deliver up or convey or assign any personal property or in an appropriate case its proceeds or value of title to lands, or choses in action, or evidences of debt may be committed until he has complied with the order or is discharged by due course of law. The court may also enforce its order by execution against the real and personal property of that person." Ill. Rev. Stat. 1979, ch. 110A, par. 277(h).

However, it is clear from the undisputed facts in this record that Barber-Greene's refusal to withhold wages was done in good faith under the belief that proceedings pursuant to the Wage Deduction Act were the only appropriate vehicle which could be used to accomplish this end. Generally, it has been held that in order to find a party in civil contempt for failure to obey a court order, the disobedience must be wilful and contumacious. (*Cole v. Cole* (1967), 85 Ill. App. 2d 105, 113, 229 N.E.2d 293; see also *Todd v. Arbuckle* (1971), 1 Ill. App. 3d 32, 33, 272 N.E.2d 257.) Yet there is authority that in certain types of civil contempt the intent of the defendant is not relevant in determining whether it should be adjudged in civil contempt of an agreed order. (See *County of Cook v. Fry Roofing Co.* (1974), 59 Ill. 2d 131, 137, 319 N.E.2d 472.) In *People v. Redlich* (1949), 402 Ill. 270, 277, 83 N.E.2d 736, the court stated:

"Contempts have been classified as civil and criminal contempts. Contempt orders in the two classes of cases are of different kinds and made to different ends. Criminal contempts include acts in disrespect of the court or its process and those tending to bring the court into disrepute or obstruct the administration of justice,

while civil contempts consist in failing to do something which the contemner is ordered by the court to do for the benefit or advantage of another party to the proceeding before the court. (*Porter v. Alexenburg*, 396 Ill. 57; *Wilson v. Prochnow*, 359 Ill. 148.) Imprisonment imposed for a criminal contempt is purely punitive and must be for a definite term. (*Rothchild & Co. v. Steger & Sons Piano Mfg. Co.* 256 Ill. 196.) But in cases of civil contempt, the sentence being imposed as a remedial or coercive measure, the appropriate punishment is to commit the contumacious party to imprisonment until he has complied with the mandate of the court, since a fine or imprisonment for a specified term might not secure obedience to the order. (*Denison Cotton Mill Co. v. Schermerhorn*, 257 Ill. 128.) In civil contempt proceedings the order entered serves two purposes. In addition to vindicating the authority and dignity of the court, it also advances the relief granted to a party to the litigation. (*People ex rel. Brundage v. Peters*, 305 Ill. 223.)"

In the case at bar, from our review of the record it cannot be said that Barber-Greene's failure to withhold funds was of such a nature that it would amount to a civil contempt for which the court should enter an order to vindicate its authority and dignity.

It has long been established that the power to punish for contempt is discretionary, and should be exercised sparingly and only when necessary to prevent actual, direct obstruction of, or interference with, the administration of justice. (*Board of Junior College District No. 508 v. Cook County College Teachers Union, Local 1600* (1970), 126 Ill. App. 2d 418, 431-32, 262 N.E.2d 125, *cert. denied* (1971), 402 U.S. 998, 29 L. Ed. 2d 165, 91 S. Ct. 2168.) We believe Barber-Greene's failure to withhold wages presented no threat to the administration of justice, especially in view of the absence of precedent on this issue, and the trial judge did not abuse his discretion in refusing to issue the rule to show cause. For the same reasons and under these limited circumstances, we find there was no abuse of discretion in his refusal to hold Barber-Greene liable for the amount of the judgment.

For the foregoing reasons, we reverse and remand for further proceedings consistent with the views expressed herein.

Reversed and remanded.

VAN DEUSEN and UNVERZAGT, JJ., concur.