SHATKIN INVESTMENT CORPORATION, Plaintiff-Appellee, v. THOMAS J. CONNELLY III, Defendant (Richard Morton *et al.*, Respondents-Appellants).

Second District Nos. 83—848, 83—880 cons.

Opinion filed November 1, 1984.

Douglas Drenk and David Drenk, both of Guerard, Konewko & Drenk, Ltd., of Wheaton, for appellants.

James S. Barber and Nathan M. Cohen, both of Arvey, Hodes, Costello & Burman, of Chicago, for appellee.

JUSTICE LINDBERG delivered the opinion of the court:
Lee A. Dominguez (Dominguez or citation respondent) and

Richard Morton (Morton or citation respondent) appeal from orders of the circuit court of Du Page County finding them in contempt of court for failing to answer certain questions propounded by Shatkin Investment Corporation (Shatkin or judgment creditor) during a citation proceeding intended to discover income or assets of Thomas J. Connelly III (Connelly or judgment debtor). Dominguez and Morton both contend that the trial court erred in allowing Shatkin to ask questions about the time period preceding the issuance of the citations, in allowing Shatkin to accept affidavits of compliance from other citation respondents, in entering orders which violated their constitutional rights, and in holding them in contempt of court. Dominguez also asserts he properly refused to answer questions based upon the attorney-client privilege and that the trial court abused its discretion in fining him for the contempt. Since we find the trial court committed no reversible errors, we affirm.

On November 29, 1977, Shatkin filed a complaint against Connelly for judgment on a promissory note in the amount of $303,377 plus interest at the rate of 5%. On February 6, 1979, judgment was entered in favor of Shatkin for $323,071.78 plus costs. On March 6, 1979, Shatkin had a citation to discover assets issued against Connelly, and on April 3, 1979, an alias citation to discover assets was issued and served on judgment debtor. Three separate rules to show cause were issued against Connelly for failure to appear for his citation, and finally, a writ of attachment was issued against him.

In July 1983, James Carney, an officer of judgment creditor, learned that Connelly was in Du Page County. An order for an alias writ of attachment was issued for judgment debtor at Churchfield Management and Investment Corporation (Churchfield), and a Du Page sheriff's officer went there to serve the writ, but was denied access to serve judgment debtor. The next day, Shatkin had issued and served upon Churchfield a citation to discover assets, a wage deduction summons, a non-wage-garnishment summons, affidavits and interrogatories. Dominguez, a vice-president of Churchfield, accepted service. Dominguez was also served personally with a citation to discover assets in a non-wage-garnishment summons. Six other businesses located in the office building where judgment debtor was sighted were served with citations.

Morton filed on August 12, 1983, Churchfield's answers to interrogatories to employer in response to judgment creditor's wage garnishment stating that judgment debtor was not employed by Churchfield on August 4, 1983, the day the wage deduction summons was served. Morton also responded that an interrogatory asking the date

of employment of judgment debtor with Churchfield was not applicable.

On September 9, 1983, Churchfield filed its appearance, and Morton appeared in court to testify for Churchfield in response to the citation to discover assets served on Churchfield. Each time judgment creditor's counsel asked Morton a question about Churchfield's relationship with judgment debtor or about property owed to judgment debtor prior to August 4, 1983, the day after the sheriff tried to serve judgment debtor at Churchfield, Churchfield objected. The trial court overruled Churchfield's objections, and Churchfield's counsel advised Morton not to answer. The trial court found Morton in contempt for refusing to answer the questions propounded by judgment creditor, and ordered Morton incarcerated for a period not to exceed six months, but stated he could purge himself by answering the questions. Morton's jail term was stayed pending this appeal.

On September 24, 1983, George Olson of Charter Mortgage Corporation signed a sworn affidavit stating that between October 1982 and May 1983 judgment debtor had sought financing from Charter Mortgage Corporation on behalf of Churchfield. Both Morton and Dominguez filed separate notices of appeal which were subsequently consolidated by this court.

Morton first contends that the trial court erroneously held him in contempt for refusing to answer certain questions propounded by judgment creditor. Section 2—1402 of the Code of Civil Procedure (Ill. Rev. Stat. 1981, ch. 110, par. 2—1402(a)) provides:

> "A judgment creditor, or his or her successor in interest when that interest is made to appear of record, is entitled to prosecute supplementary proceedings for the purposes of examining the judgment debtor or any other person to discover assets or income of the debtor not exempt from the enforcement of the judgment therefrom, a deduction order or garnishment, and of compelling the application of non-exempt assets or income discovered toward the payment of the amount due under the judgment."

This statute is to be construed liberally. (*Second New Haven Bank v. Kobrite, Inc.* (1980), 86 Ill. App. 3d 832, 835, 408 N.E.2d 369, 371.) According to Supreme Court Rule 277 (73 Ill. 2d R. 277(a)), which governs citation procedure:

> "A supplementary proceeding authorized by section 73 of the Civil Practice Act may be commenced at any time with respect to a judgment upon which execution may issue. The proceeding may be against the judgment debtor or any third party the

judgment creditor believes has property of or is indebted to the judgment debtor. If there has been a prior supplementary proceeding with respect to the same judgment against the party, whether he is the judgment debtor or a third party, no further proceeding shall be commenced against him except by leave of court. The leave may be granted upon *ex parte* motion of the judgment creditor, but only upon a finding of the court, based upon affidavit of the judgment creditor or some other person, having personal knowledge of the facts, (1) that there is reason to believe the party against whom the proceeding is sought to be commenced has property or income the creditor is entitled to reach, or, if a third party, is indebted to the judgment debtor, (2) that the existence of the property, income or indebtedness was not known to the judgment creditor during the pendency of any prior supplementary proceeding, and (3) that the additional supplementary proceeding is sought in good faith to discover assets and not to harass the judgment debtor or third party."

The examination of the debtor or third party shall be before open court and the court is directed to conduct the proceeding to protect the rights of all parties and to avoid harassment. (73 Ill. 2d R. 277(e).) To promote these goals, the court is authorized to punish for contempt any person who fails to obey an order of the court issued in a supplementary proceeding. 73 Ill. 2d R. 277(h).

 Morton contends that the numerous questions he refused to answer were either irrelevant, invaded Churchfield's privacy, or exceeded the scope of questioning permissible at a supplementary proceeding. The unanswered questions can be grouped into two general categories: those relating specifically to Morton and Churchfield and those relating to Churchfield's knowledge of and relationship with judgment debtor. The five questions in the first group are not sufficiently related to the location of judgment debtor's assets to warrant a contempt citation. For example, knowledge of Morton's home address, whether he resides in Du Page County, or about the names of Churchfield's employees is not relevant to the location of judgment debtor's assets absent additional information. The second group, however, contains questions which are material to the inquiry. For example, judgment creditor asked whether Churchfield had ever done business with the judgment debtor, had ever been owed money by or owed money to judgment debtor, had ever employed or received things of value from judgment debtor, and asked other questions relating to Churchfield's past relationship with judgment debtor.

Morton objected at trial and reasserts on appeal that these questions were improper because they were not limited to Churchfield's knowledge after August 4, 1983, the day Churchfield was served with the citation. Any relationship between Churchfield and judgment debtor prior to that time, Churchfield asserts, is irrelevant. We disagree. The statute does not limit the scope of the questioning to the period following issuance of the citation. Employing a liberal construction of the statute, we find the questions asked by judgment creditor about the prior period are capable of eliciting information concerning the location of judgment debtor's assets. Churchfield should not be allowed to circumvent the purpose of the proceedings by limiting his questions to the one-month period between receipt of the citation and its appearance before the court. Apart from the generalized and unsubstantiated privacy invasion concerns advanced by Churchfield, we see no reason for preventing judgment creditor from asking about past financial relationships between judgment debtor and Churchfield or any justification for Churchfield's failing to answer these questions.

■ Also unpersuasive is Churchfield's argument that it had already answered the questions in the form of written interrogatories submitted prior to the proceeding. Nothing in the statute precludes a judgment creditor from asking in court questions which were asked in the interrogatories. Furthermore, the interrogatories consisted of two court forms—"Interrogatories To Employer" and "Interrogatories To Garnishee"—which were very limited in scope. In response to the one relevant question in the former form, Churchfield responded "N/A" (not applicable). On the latter form, Churchfield responded in the negative to two questions asked: (1) whether at the time of receiving the summons it possessed property belonging to judgment debtor and (2) whether once served it was indebted to judgment debtor at all. These questions do not duplicate the questions asked by judgment creditor at the supplementary proceeding, which focused on the financial and employment relationship between Churchfield and Connelly prior to the issuance of the citation.

Morton's reliance on *Fischer v. Kellenberger* (1979), 73 Ill. App. 3d 550, 392 N.E.2d 733, is misplaced. There, an ex-wife attempted to use the supplementary citation proceeding to require her former in-laws to disclose the location of their son. Here, judgment creditor's questions are intended to uncover any previous financial and employment relationship between judgment debtor and Churchfield to facilitate the location and collection of judgment debtor's assets. Thus, *Kellenberger* is distinguishable.

■ Dominguez raises a different argument in favor of reversing

his contempt citation. He asserts that requiring him to disclose the name of his client would have forced him to violate the attorney-client privilege and would be unethical. Recognizing that the general rule in Illinois is that the privilege does not extend to the identity of an attorney's client (*People v. Williams* (1983), 97 Ill. 2d 252, 257), he seeks to avoid its application by arguing that judgment creditor already knew with whom it was contending and thus, disclosure of his client was unnecessary.

Judgment creditor argues, and we agree, that the identity of Dominguez' client was not protected by the attorney-client privilege. Mere assertion of the privilege or refusal to answer is not enough to cloak a communication (*Cox v. Yellow Cab Co.* (1975), 61 Ill. 2d 416, 420), and the burden of establishing the privilege rests on the party asserting it. (*Consolidation Coal Co. v. Bucyrus-Erie Co.* (1982), 89 Ill. 2d 103, 119.) The scope of the privilege is narrow. (*Consolidation Coal Co. v. Bucyrus-Erie Co.* (1982), 89 Ill. 2d 103.) The identity of the lawyer's client is outside the scope of the privilege except in those rare instances when application of the privilege is shown to be in the public interest (E. Cleary & M. Graham, Handbook of Illinois Evidence 209 (3d ed. 1979)), or will harm the client in some substantial way. (*People v. Williams* (1983), 97 Ill. 2d 252, 295.) Dominguez cites to no such public interest or substantial prejudice here. Dominguez' argument that because judgment creditor knew the identity of his client, it was justified in not disclosing the client's name is unpersuasive. As the record discloses, judgment creditor did not know for certain the identity of Domingeuz' client. Were judgment creditor to have known the identity, such knowledge would seem to warrant confirmation of the client's identity by Dominguez, not protection of the "secret." Since disclosure of the identity of an attorney's client provides proof of the existence of the relationship, provides the opposing party with proof that his opponent is not solely a nominal party, and provides proof to the court that "the client whose secret is treasured is actual flesh and blood" (see Annot., 16 A.L.R.3d 1047, 1050 (1967)), Dominguez was not justified in refusing to disclose the identity of his client based upon the attorney-client privilege.

■ We also find unpersuasive Dominguez' argument that disclosure would have constituted unethical behavior. Canon 4 (87 Ill. 2d Canon 4) provides that "a lawyer should preserve the confidences and secrets of a client." In interpreting the scope of this canon, Formal Opinion 403 (Illinois State Bar Association Opinions on Professional Ethics, Formal Op. 403 (1973)) concluded that it would be unethical for a lawyer to fail to disclose the name and address of his client. The

attorney in his request for the opinion stated he had completed income tax returns for several clients and had reason to believe that at least one client had not filed his return. Although Dominguez relies upon Formal Opinion 403, its facts are distinguishable from those at bar. The opinion noted that one relevant factor when considering disclosure is whether release of the client's name would be detrimental or would embarrass the client. Based on the facts presented in Formal Opinion 403, disclosure of the name and address of the client would have provided the Internal Revenue Service with sufficient information to initiate an investigation. Therefore, the disclosure would have substantially prejudiced the attorney's client. Here, disclosure of the name of Dominguez' client could not have jeopardized his client absent disclosure of additional information. Dominguez' reliance on Illinois State Bar Association Opinion 538 (Illinois Bar Association Opinions on Professional Ethics, Formal Op. 538 (1976)) also is misplaced. There, the opinion specifically stated that disclosure of the address would not be unethical and would not violate Canon 4. Therefore, Dominguez' argument that disclosure would be unethical based upon Formal Opinion 538 is without basis.

Both Morton and Dominguez next contend the trial court erred in finding them in direct contempt because their conduct was not calculated to embarrass, hinder or obstruct the court, to derogate from its authority or dignity, or to bring the administration of law into disrepute. Judgment creditor responds that because the judge's order was a civil and not a criminal contempt citation, citation respondents' intent is irrelevant.

Contempt proceedings generally have been classified as either civil or criminal, although each may entail characteristics possessed by the other. (*County of Cook v. Lloyd A. Fry Roofing Co.* (1974), 59 Ill. 2d 131.) Criminal contempt often involves an attempt to undermine the court's authority, has a punitive as opposed to a coercive purpose, and is intended to protect the judicial process, and its punishment cannot be avoided simply by complying with the court order. (*In re Estate of Shlensky* (1977), 49 Ill. App. 3d 885, 364 N.E.2d 430.)

> "In contrast, civil contempt proceedings are prospective in nature and usually instituted where a party has failed to perform an affirmative act which that party had been ordered to do for the benefit of the opposing party. In effect, a civil contempt proceeding is but a continuation of the original proceeding which resulted in the order or decree. The court seeks to compel obedience to its order by punishment which the contem-

nor can avoid by compliance with the order or by punishment imposed until there is compliance. [Citations.] It has been said that criminal contempt consists in doing what has been prohibited whereas civil contempt consists in refusing to do what has been ordered." (49 Ill. App. 3d 885, 891-92, 364 N.E.2d 430, 435.)

Our review of the proceedings convinces us that the orders involved here are civil in nature. In both orders, the court specifically stated the contemnors could purge themselves of the contempt sanctions by answering the questions propounded by judgment creditor. Also, the orders were entered principally to benefit judgment creditor and not to punish Morton and Dominguez. Compare *National Metalcrafters v. Local 449* (1984), 125 Ill. App. 3d 399, 465 N.E.2d 1001.

▆▆ In cases involving civil contempts generally, the intent of the contemnor is not relevant. As the supreme court stated in concluding that the intent of the defendant was not relevant in determining whether the defendant could be held in civil contempt of an agreed order:

" 'The absence of wilfulness does not relieve from civil contempt. *** Since the purpose [of civil contempt] is remedial, it matters not with what intent the defendant did the prohibited act. The decree was not fashioned so as to grant or withhold its benefits dependent on the state of [the contemnor's] mind ***. It laid on them a duty to obey specified provisions of the statute. An act does not cease to be a violation of a law and of a decree merely because it may have been done innocently.' " (*County of Cook v. Lloyd A. Fry Roofing Co.* (1974), 59 Ill. 2d 131, 137, quoting *McComb v. Jacksonville Paper Co.* (1949), 336 U.S. 187, 93 L. Ed. 599, 69 S. Ct. 497.)

See also 17 Am. Jur. 2d *Contempt* sec. 8 (1964).

Defendant's attempt to circumvent this rule by relying on isolated language of this court in *Kauk v. Matthews* (1981), 100 Ill. App. 3d 107, 426 N.E.2d 552, that intent is relevant in some civil cases is unavailing. There, the trial court refused to issue a rule to show cause why the third-party citee should not be held in contempt. (100 Ill. App. 3d 107, 108, 426 N.E.2d 552, 553.) On appeal, the judgment creditor argued that the trial court erroneously denied his request for the rule to show cause. Since this issue would necessarily arise in the proceedings following a remandment, this court analyzed judgment creditor's assertion that his rule to show cause should have been granted and rejected his contention:

"In the case at bar, from our review of the record it cannot be

said that Barber-Greene's failure to withhold funds was of such a nature that it would amount to a civil contempt for which the court should enter an order to vindicate its authority and dignity." (100 Ill. App. 3d 107, 115, 426 N.E.2d 552, 558.) Since the court concluded that the third-party citee's action did not amount to civil contempt, *Kauk* is distinguishable from the facts here, where the refusals of Morton and Dominguez to answer Shatkin's questions did constitute civil contempt.

■■■ Citation respondents next argue that the trial court erred in allowing judgment creditor to accept six written affidavits of compliance from the other citees while refusing to accept the affidavits of compliance of citation respondents, and argue that this disparity in treatment evidences judgment creditor's intent to harass them and results in an injustice. Morton and Dominguez assert that the trial court violated Supreme Court Rule 277(e) (87 Ill. 2d R. 277(e)), which empowers the court to terminate the citation order "to the end that the rights and interests of all parties and persons involved may be protected and harassment avoided." Nothing in Rule 277, however, requires the court to have terminated this proceeding or to have treated all citees equally. Rather, the rule indicates that the court should examine each citation individually to determine the likelihood of uncovering judgment debtor's assets by questioning the citee. In this case, judgment debtor had been observed entering the building in which Churchfield's offices are located, and Churchfield had refused a sheriff's request to enter his offices to serve judgment debtor. The record contains no similar evidence which linked judgment debtor to the other citees. Refusal to admit the sheriff alone justified continuing the citation proceedings against these citation respondents. We find no abuse in the disparity in treatment accorded the different citees.

■■■ Morton and Dominguez next argue that their contempt orders should be reversed because the orders fail to specify the act or acts upon which the contempts were based. The court's September 9, 1983, order entered against Morton states:

"IT IS HEREBY ORDERED THAT:

(1) Richard Morton is found to be in contempt of court for failure to answer questions ordered to be answered by him in this citation.

* * *

(4) Richard Morton may purge himself if said contemnor answers the questions which he refused to answer."

Judgment creditor correctly states that the trial court's order is to be read by the reviewing court in conjunction with the record. (*People v.*

*Baxter* (1972), 50 Ill. 2d 286, 289-90.) Review of the record makes clear that Morton refused to answer specific questions propounded by judgment creditor. The order states that Morton was held in contempt for refusal to answer these questions. Accordingly, no basis exists for Morton's conclusion that the order when read in combination with the record is unspecific and unclear.

■■■ The record similarly makes clear that Dominguez was held in contempt for refusing to take the stand and answer even the most basic question; the identity of his client or former client. As Dominguez' attorney stated:

> "MR. DRENK: Both of them are here, Judge, and I can indicate to the Court that Mr. Dominguez is going to take the attorney-client privilege. It has not been waived by a possible former client. He is not willing to indicate to Mr. Barber that Mr. Connelly was or was not his client and he is not willing to indicate anything he has or any knowledge he has of the whereabouts and he is going to stand behind the attorney-client privilege until that is waived by Mr. Connelly, having represented him in the past."

Based upon this refusal to take the stand, the court entered its contempt order stating, "Lee Dominguez is found to be in contempt of court for refusing to take the stand and answer questions under oath and citation at the court's direction as propounded by plaintiff's counsel." Because the order and record read together are clear, and contain the necessary facts, Dominguez' assertion that the order is defective is without basis.

■■■ Dominguez next asserts that the trial court erred in ordering him to pay a fine of $100 for failing to testify. The power to punish for contempt is inherent, and courts may exercise discretion in fashioning appropriate remedies for a party's contumacious behavior. (*47th & State Currency Exchange, Inc. v. B. Coleman Corp.* (1977), 56 Ill. App. 3d 229, 371 N.E.2d 294.) Some authorities suggest that a fine can be imposed for civil as well as criminal contempt. (See *Rothschild & Co. v. Steger & Sons Piano Co.* (1912), 256 Ill. 196, 200-01; *47th & State Currency Exchange, Inc. v. B. Coleman Corp.* (1977), 56 Ill. App. 3d 229, 234, 371 N.E.2d 294, 298; *Eberle v. Green* (1966), 71 Ill. App. 2d 85, 93, 217 N.E.2d 6, 10.) The purpose of civil contempt sanctions is "to coerce future compliance with a court-entered order." (*Harvey v. Carponelli* (1983), 117 Ill. App. 3d 448, 452, 453 N.E.2d 820, 824, *cert. denied* (1984), ___ U.S. ___, 80 L. Ed. 2d 539, 104 S. Ct. 2153.) Here, the trial judge specifically stated in the contempt order that Dominguez can purge himself of the fine by answering the

questions. A trial court's determination of contempt will not be disturbed unless against the manifest weight of the evidence where the record discloses an abuse of discretion. (*Harvey v. Carponelli* (1983), 117 Ill. App. 3d 448, 453 N.E.2d 820.) We cannot conclude that the trial court abused its discretion in fining Dominguez.

■■ As their final assignment of error, citation respondents contend that the trial court orders violated certain of their constitutional rights. Specifically, they contend Supreme Court Rule 277 (87 Ill. 2d R. 277) as applied in this case violated their due process rights, and Morton further argues his right to be free from unreasonable seizures was violated. Neither argument is convincing.

The essence of citation respondents' due process argument is that certain citees were allowed to submit affidavits of compliance, while Morton and Dominguez were forced to appear at the hearing. Citation respondents have waived this constitutional argument, for no authority was cited to support their positions apart from quotations from one decision which defined due process. (See 87 Ill. 2d R. 341(e)(7).) Even if the merits are addressed, we are unpersuaded by their due process argument. In effect, Morton and Dominguez are complaining of disparity in treatment which would suggest, if anything, an equal protection violation. As judgment creditor notes, citation respondents received the procedural due process safeguards: notice and summons to appear for the proceeding, a full hearing before the court, representation by counsel, an opportunity to testify and present arguments, and an opportunity to appeal the court's ruling. Further, in contrast to their assertion, unsubstantiated by the record, that judgment creditor had no basis to proceed solely against them, the record indicates Churchfield refused the request of a sheriff to look for judgment debtor on its premises. The sighting of judgment debtor near Churchfield, coupled with its refusal to cooperate with the sheriff's officer, supports pursuing the citation against Churchfield and accepting the affidavits of compliance from the other tenants in the same building.

■■ Morton's argument that Supreme Court Rule 277 (87 Ill. 2d R. 277), as applied, violates his right to be free from unreasonable seizures similarly is unpersuasive. In his appellate brief, Morton makes no reference to any portion of the record where he raised this argument to the trial court. The general rule is that the person asserting an invasion of his constitutional rights has the duty to raise the objection at the earliest fair opportunity, and the failure to do so operates as a waiver of the right. (See *Feldman v. Board of Trustees* (1982), 108 Ill. App. 3d 1127, 1134, 440 N.E.2d 147, 152.) In addition, Morton cites no authority for his contention, but rather simply quotes verba-

tim the text of the fourth amendment (U.S. Const., amend. IV) and then cites one case for the proposition that the fourth amendment is made applicable to the State through the fourteenth amendment (U.S. Const., amend. XIV). The failure of a party to cite authority in support of his argument that his constitutional rights have been violated constitutes a waiver of that argument. (87 Ill. 2d R. 341(e)(7); *Department of Transportation v. Association of Franciscan Fathers* (1981), 93 Ill. App. 3d 1141, 1150-51, 418 N.E.2d 36, 43-44.) Therefore, we conclude Morton has waived his fourth amendment claim.

The judgment of the circuit court of Du Page County is affirmed.

Affirmed.

UNVERZAGT and SCHNAKE, JJ., concur.