**FLIP SIDE PRODUCTIONS, INC., Plaintiff,**

v.

**JAM PRODUCTIONS, LTD., et al., Defendants.**

No. 82 C 3684.

United States District Court, N.D. Illinois, E.D.

March 15, 1989.

## MEMORANDUM AND ORDER

MORAN, District Judge.

We have before us the Tempo defendants' Rule 60(b) motion and also their emergency motion for rule to show cause why plaintiff Flip Side Productions, Inc. and its officer Larry Rosenbaum should not be held in contempt of court. The Rule 60(b) motion is denied as procedurally unsound and the motion for rule to show cause is denied as inappropriate.

### FACTS

The Tempo defendants (Tempo) have an outstanding judgment against Flip Side Productions, Inc. in the amount of $90,-702.02. Both of these motions arise out of Tempo's attempt to collect that judgment.

Pursuant to Rule 60(b) of the Federal Rules of Civil Procedure, Tempo petitions this court for permission to move against parties in addition to Flip Side Productions. As a judgment creditor, Tempo commenced supplementary proceedings with service of a citation pursuant to Ill.Rev.Stat. ch. 110, ¶ 2–1402. That citation was entered by the clerk of the court on June 22, 1988. It requested production of various documents and, at the very end, contained the following proviso:

> YOU ARE PROHIBITED from making or allowing any transfer or other disposition of, or interfering with, any property not exempt from execution or garnishment until further order of court or termination of the proceedings.

> Your failure to comply with this citation may subject you to punishment for contempt of this Court.

(Tempo's emergency motion, exh. A at 3–4). The relevant notice was not, however, served on either Flip Side Productions, Inc. or Larry Rosenbaum (Rosenbaum). Instead, as the document itself makes clear, the amended citation was served on Stephen M. Kramer in Philadelphia, Pennsylvania.

There is no dispute as to the amounts of various transfers from Flip Side Production's bank account at the Continental Bank of Buffalo Grove (Continental): $6713.18 (June 30, 1988, checks nos. 1414–1418); $6600 (July 13, 1988, checks nos. 1419–1422); $3800 (July 28, 1988, checks nos. 1424–1425); $2600 (August 1, 1988, check no. 1423); $200 (August 2, 1988; check no. 1426). Continental's bank statement (Tempo's 2nd motion, exh. 1) illustrates a transfer of $1200 on August 13, 1988, a deposit by Flip Side of $7000 on August 12, 1988, and a stop-payment order for $7000 on August 18, 1988.

### DISCUSSION

1. *Rule 60(b)*

 The relevant portion of Rule 60(b) reads as follows:

**(b) Mistakes; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud, etc.**

On motion and upon such terms as are just, the court may relieve a part or a party's legal representative from a final judgment, order or proceeding for the following reasons:

\* \* \* \* \* \*

or (6) any other reason justifying relief from the operation of the judgment.

While this court wishes to end this litigation as much as the parties, we are unable to assess the merits of the Rule 60(b) motion at this time. In sum, Tempo has chosen the wrong rule through which to bring this motion. Instead, its attempt to pierce the corporate veil and reach Rosenbaum's individual assets should be made in a motion brought pursuant to Rule 69.

Rule 60, specifically subsection (b)(6), is not the appropriate procedural hook on which to hang the requested relief. For example, we are uncomfortable characterizing as "relief from the operation of the judgment" the addition of personal liability to our prior order. *Kirby Forest Industries, Inc. v. United States*, 467 U.S. 1, 104 S.Ct. 2187, 81 L.Ed.2d 1 (1984), is not to the contrary. *Kirby* directed the district court to reconsider a condemnation award in light of apparent changes in the value of the land there at issue. We are asked here, however, not to reconsider our award, but rather to reconsider the parties against whom that award was assessed. While that sort of reconsideration should occur in a supplemental proceeding, it is inappropriate pursuant to Rule 60(b).

If substantial justice and/or the policies underlying Rule 11 require personal liability, then a procedurally correct motion by Tempo would be granted. However, desirable ends such as these cannot be pursued through inappropriate means.

Rule 69, entitled "Execution," provides the preferred process by which plaintiffs can enforce a judgment for the payment of money. It specifies that those proceedings "shall be in accordance with the practice and procedure of the state in which the district court is held, existing at the time the remedy is sought, except that any statute of the United States governs to the extent that it is applicable." We therefore require the parties to brief the issue, with particular emphasis on the appropriate state law proceedings.

We realize that much of the discussion with respect to the new Rule 69 motion will merely reiterate the same arguments already before the court in the parties' Rule 60(b) papers. Nonetheless, we are constrained by recent pronouncements as to the need to test procedural postures with exacting scrutiny. *Cf. Landau & Cleary, Ltd. v. Hribar Trucking, Inc., et al.*, 867 F.2d 996 (7th Cir.1989) (affirming district court's denial where motion should have been brought pursuant to Rule 60(b) but was instead labeled a "motion for recoupment"). Given our familiarity with the issues, however, the parties should rest assured that the Rule 69 motions will be decided soon after they become fully briefed.

### 2. *Rule to Show Cause*

■ Tempo alleges that Flipside Productions, Inc., and its officer, Rosenbaum, have violated this court's citation and therefore should be held in contempt of court. While we are uncertain as to whether the citation was actually violated, we hold that contempt would be inappropriate regardless.

Ill.Rev.Stat. ch. 110A, ¶ 277, provides the remedy for violations of citations issued pursuant to Ill.Rev.Stat. ch. 110, ¶ 2–1402. Enforcement is provided by paragraph 277:

> (h) Sanctions. Any person who fails to obey a citation, subpoena, or order or other direction of the court issued pursuant to any provision of this rule may be punished for contempt.

Ill.Rev.Stat. ch. 110A, ¶ 277(h). This subsection, as with other decisions pertaining to contempt, leaves the final determination to the discretion of the court. We make that decision in light of the relevant case law and the policies to which enforcement through contempt is addressed.

"It has long been established that the power to punish for contempt is discretionary, and should be exercised sparingly." *Kauk v. Matthews*, 100 Ill.App.3d 107, 115, 55 Ill.Dec. 406, 412, 426 N.E.2d 552, 558 (2d Dist.1981). As contrasted with criminal contempt, civil contempt appears to serve two purposes. First, punishment of violators vindicates the "authority and dignity of the court." *People v. Redlich*, 402 Ill. 270, 277, 83 N.E.2d 736, 740–41 (1949) (citations omitted). And second, civil contempt "advances the relief granted to a party to the litigation." *Id.*

Furthermore, there is a general belief, though not a unanimous one, that "in order to find a party in civil contempt for failure to obey a court order, the disobedience must be wilful and contumacious." *Kauk*, 100 Ill.App.3d at 115, 55 Ill.Dec. at 411, 426 N.E.2d at 557 (citations omitted). While not making relief to the judgment creditor any less likely, a finding of intent presumably makes the violation that much more of an affront to the court. We therefore inquire into the aims of Flip Side Productions and Rosenbaum.

■ Of independent legal significance—but also relevant to the intent inquiry—is whether or not Flip Side Productions and/or Rosenbaum were given notice of the citation. Substantive due process requires that actual notice be given to the party against whom the contempt is sought. *Manley Motor Sales Co. v. Kennedy*, 95 Ill.App.3d 199, 203, 50 Ill.Dec. 679, 682, 419 N.E.2d 947, 950 (2d Dist. 1981). Here, however, the citation was served only on attorney Kramer. That type of "service by agent" is not legally tantamount to actual service in this context. *See id.* (holding service on attorneys insufficient because "substantive due process requires only actual notice, that is, reasonable assurance that notice was actually given to the party"). Further, the evidence here indicates that service on the attorney did not lead to actual notice until much later. *Contra Martin v. C.D. Gray, Inc.*, 110 F.R.D. 398, 401 (N.D.Ill.1986). ("Thus, unlike the judgment debtor in *Manley*, there is no doubt that Gray has re-ceived actual notice"). Kramer did not transfer the citation nor inform Rosenbaum—and thereby Flipside Productions—of its contents until July 18, 1988, long after Kramer himself was served on June 23, 1988. That was also this court's view immediately following Mr. Rosenbaum's October 7, 1988 testimony (tr. at 53) ("I believe Mr. Rosenbaum to the extent that Mr. Kramer didn't really volunteer when it happened and so that it [that there was a citation outstanding] came as somewhat of a shock further down the road"). With respect to the June 30 and July 13, 1988 transfers, it is therefore clear that Flipside Productions and Rosenbaum were not properly served. Again, that was this court's view on October 7, 1988, and it remains so today (tr. at 54). Without notice, it is also clear that Rosenbaum and Flip Side Productions could not have intentionally violated the citation.

The analysis is quite different with respect to the check transfers of July 26, August 1, August 2 and August 13, 1988. According to Rosenbaum's own testimony he received a copy of the citation on July 18, 1988. Each of these transactions occurred after Rosenbaum received actual notice by receipt of the citation from Kramer.

There are separate considerations with respect to these "post-notice" transactions. First, we inquire into Rosenbaum's intent, and second, we determine whether a holding of contempt is necessary to ensure that the outstanding judgment is satisfied.

With respect to Rosenbaum's intent, we need look no further than his October 7, 1988 testimony. He contends that he was unaware that the citation prohibited the transfer of assets. Rosenbaum also claims that Kramer told him the citation prohibited only the destruction of documents and encouraged him to continue to operate the business as usual. In particular, Rosenbaum maintains that after being asked whether passing salaries through Flipside Productions remained permissible, Kramer answered, "[A]bsolutely" (tr. at 14).

We find this testimony persuasive as to the factual circumstances which surrounded the post-notice transfers. Were Rosen-

baum aware of the citation and its meaning, we think it unlikely Flipside, Inc. would have continued depositing money into the Continental account. Further, our own review of the citation leads us to conclude, given his rather cursory reading, that Rosenbaum probably viewed its effect as merely prohibiting the destruction of documents. Most of the citation describes the type of materials to be produced at the depositions. Only after detailing the six separate types of documents does the citation list the prohibited activity. Thus a quick review by Rosenbaum may well have led to less than a full understanding of the citation's meaning. With respect to whether Flip Side Production's attorney would likely mischaracterize the citation so badly, the course of the prior litigations does not foster skepticism.

The importance of Rosenbaum's perspective is made clear by the *Kauk* decision. The court refused to hold an employer in contempt for its having transferred assets after being personally served with a citation, because the transfer was done in the mistaken belief that the citation did not prohibit the transfer. "Barber–Greene's [the employer] refusal to withhold wages was done in good faith under the belief that proceedings pursuant to the Wage Deduction Act were the only appropriate vehicle which could be used to accomplish this end." 100 Ill.App.3d at 114, 55 Ill.Dec. at 411, 426 N.E.2d at 557.

Furthermore, we do not see how a finding of contempt will significantly advance the relief granted to Tempo—the judgment creditor. Its ability to recover from both Flip Side, Inc. (seemingly the corporate parent), as well as the officers of Flip Side Productions, will depend on our resolution of the corporate veil issue. As is explained *infra*, the contempt inquiry is inevitably tied up with many of the same arguments. The requirement that contempt be found only sparingly, when combined with Rosenbaum's lack of intent and our eventual inquiry into the corporate veil issues, leads us to find contempt inappropriate even were we to find the citation has been violated.

Given the history of the litigation and the ease with which Flip Side Productions has adjusted to the freezing of its account, we will not go so far as to direct Continental to free those resources at issue. We choose instead to maintain the status quo until the corporate veil arguments—incorrectly before us as a Rule 60(b) motion—are resolved.

■ We do, however, need to resolve the fraudulent conveyance claim.[1] Tempo alleges that Flip Side Productions has tolerated Flip Side, Inc.'s cessation of payments. They allege this acquiescence—by permitting the $7000 stop-payment order—works to their detriment as there are no other assets with which to pay the judgment owed.

This issue relates back to whether Flip Side Productions had any right to the transfers, a dispute which may well be irrelevant after the corporate veil issues are resolved. Nonetheless, we hold that the Illinois statute cannot be construed to impose an obligation, outside of bankruptcy proceedings, to pursue potentially valid claims so as to benefit judgment creditors. Further, there is considerable doubt as to whether Flip Side, Inc. was under any legal obligation to continue to transfer money to the Continental account. As this court noted on October 7, 1988, "Do I mean by that they have to continue to do business in that way [paying the salaries through Flip Side Productions] and have to render the services to Flip Side Production and, in effect bill Flipside [Inc.], I don't think so. If they want to change that, they are entitled to do it" (tr. at 53). We therefore hold that Flip Side Productions' acquiescience cannot be interpreted to be a fraudulent conveyance.

## CONCLUSION

For the foregoing reasons, we deny both the Rule 60(b) motion and the emergency motion for rule to show cause.

---

1. It has not escaped this court's attention that Tempo's complaints as to the relevance of the earmarking doctrine—that the doctrine is applicable only in bankruptcy proceedings—are equally damaging to their own line of argument here.