2019 IL App (1st) 190012
No. 1-19-0012
Opinion filed June 4, 2019

Second Division

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| MICHAEL MARGULES, EDWARD AMARAL, and MOSHOLU, INC., | ) ) | |
| | ) | Appeal from the |
| Plaintiffs-Appellees, | ) | Circuit Court of |
| | ) | Cook County. |
| v. | ) | |
| | ) | No. 17 L 50107 |
| JOHN BECKSTEDT and WHEN 2 TRADE GROUP, LLC., | ) ) | |
| | ) | Honorable |
| | ) | Michael F. Otto, |
| Defendants | ) | Judge, presiding. |
| | ) | |
| (Richard Steck, Citation Respondent and Contemnor-Appellant). | ) ) | |

_____

JUSTICE HYMAN delivered the judgment of the court, with opinion.
Justices Lavin and Pucinski concurred in the judgment and opinion.

**OPINION**

¶ 1     Plaintiffs registered in Cook County a judgment of $1.675 million against John Beckstedt and When 2 Trade Group, LLC (together, debtors), and filed citations to discover assets on them. Unsatisfied with the responses to the citations, plaintiffs issued a third-party citation to discover assets against the debtors' lawyer, Richard Steck. Plaintiffs wanted to know about the source of payments for Steck's representation. During Steck's citation examination, he explained that a

third party, also his client, had asked him to represent the debtors. When pressed about the identity of the third-party client, he declined to answer, citing attorney-client privilege and the Illinois Rules of Professional Conduct.

¶ 2     Plaintiffs moved to compel Steck to reveal the identity of his third-party client. The trial court granted the motion and held Steck in contempt, fining him $25 per day until he complied with the trial court's ruling. After Steck moved to reconsider, the trial court stayed its contempt order pending Steck's anticipated appeal. Steck now challenges the trial court's contempt finding.

¶ 3     We conclude that neither attorney-client privilege nor the Rules of Professional Conduct shield the identity of Steck's third-party client, so affirm the judgment of the trial court and remand for further proceedings.

¶ 4                          Background

¶ 5     On January 19, 2017, the Superior Court of California entered a $1.675 million judgment in favor of plaintiffs. After registering the judgment in Cook County, plaintiffs initiated supplementary proceedings to discover assets to satisfy the judgment. Plaintiffs issued citations to discover assets against the debtors directly. Then, in June 2017, skeptical of and unsatisfied with the debtors' responses to the citations, plaintiffs filed a third-party citation to discover assets against the debtors' lawyer, Richard Steck.

¶ 6     Relevant here, the citation requested "[a]ll documents evidencing any payments received by [Steck] or any others employed by [him] with respect to any representation of John Beckstedt [or When 2 Trade Group LLC] or by any other individual or entity acting on [their] behalf." In addition, the citation requested "[a]ll documents evidencing any retainer received or held by

[Steck] or any others employed by or in partnership with [him] with respect to any representation of John Beckstedt [or When 2 Trade Group LLC] whether paid by [them] or by any other individual or entity acting on [their] behalf." Steck, while noting and reserving some objections, denied having been paid by the debtors or anyone purporting to act on their behalf.

¶ 7    What happened over the next year is not apparent from the record, but in April 2018 Steck and plaintiffs' lawyers exchanged a series of e-mails. One of plaintiffs' lawyers explained to Steck that they had made "multiple attempts to gather information from Mr. Beckstedt." Based on their conclusion that Beckstedt "either cannot answer [their] questions or is choosing not to," plaintiffs' lawyers requested that Steck sit for a citation examination. Steck responded that he had "no invoices, evidence of payment or other like records" because he had never billed or issued statements to Beckstedt or When 2 Trade. It was in this series of e-mails that Steck first asserted that "any information [he] ha[d] about [his] clients other than When 2 Trade and Beckstedt is privileged, including their identity."

¶ 8    Unsatisfied with that answer, plaintiffs' lawyers sent Steck an e-mail explaining they believed a third party was "paying [j]udgment [d]ebtors' tab" and that they had a right to "both [Steck's] requests for payment in the form of invoices/bills and evidence of [his] receipt of payment for [his] work on their behalf." Steck continued asserting the privilege, and though his e-mails deteriorated in civility, ultimately he agreed to sit for an examination.

¶ 9    At his examination, Steck provided greater detail about the involvement of his third-party client:

"Q. So since 2012, you have received no payments from either John Beckstedt or When 2 Trade Group for legal services?

A. I don't believe that I have. I did a search of my records and did not find any.

Q. Have you been paid by anyone for legal services you provided to John Beckstedt from 2012 to the present?

A. Not specifically, no.

Q. What do you mean 'not specifically'?

A. I was asked—asked to represent both Beckstedt and When 2 Trade by a third party, and I would say that I would [*sic*] I have received from that third party is intangibles, not any money, property, or any other tangible consideration.

Q. Who was this third party?

A. I'm not privileged to say that. I was told not to reveal his identity. It was given to me in confidence and in addition, he is a client of mine and, therefore, I believe that the attorney-client privilege would have to be waived in order for me to answer that question.

Q. So you're refusing to answer the question as to the identity of the third party on the grounds of attorney-client privilege?

A. And because it was given to me in confidence and that—and because it was given to me in confidence and it is not relevant in any issue on your citation, I don't believe I can disclose it.

Q. What intangibles have you received from that third party?

A. Goodwill.

Q. Meaning what?

A. Meaning I get a lot of business from that third party, other business.

Q. Other than the goodwill you received from the third party, have you received any other consideration for your representation of John Beckstedt?

A. No.

Q. How about as to When 2 Trade Group?

A. No."

Further examination revealed that Steck's third-party client asked Steck to represent the debtors in 2013. He admitted that he "d[id] not understand the relationship" between his third-party client and the debtors, and he claimed to be unaware as to whether it was a "direct relationship."

¶ 10     A few months after Steck's examination, the trial court got involved. Plaintiffs filed a motion to compel Steck to reveal the identity of his third-party client. That motion is absent from the record, but we do have Steck's response and plaintiffs' reply. Steck, disputing plaintiffs' citation of *Shatkin Investment Corp. v. Connelly*, 128 Ill. App. 3d 518 (1984), argued that plaintiffs improperly relied on the "general rule" that a client's identity is not privileged. Instead, Steck cited *Cesena v. Du Page County*, 201 Ill. App. 3d 96 (1990), *rev'd on other grounds*, 145 Ill. 2d 32 (1991), and argued application of both the public interest and prejudice exceptions to the general rule. Throughout his response, Steck also mentioned Rule 1.6 of the Illinois Rules of Professional Conduct (eff. Jan. 1, 2016) and argued that revealing his client's identity would cause him to violate his ethical duty to keep client confidences.

¶ 11     Plaintiffs replied that Steck, as the party bearing the burden to establish attorney-client privilege, did not provide "any factual evidence to support his claim." Similarly, plaintiffs pointed out that Steck did not "provide any factual support" for applying the exceptions set out in

*Cesena*. Plaintiffs went on to distinguish *Cesena*. As to confidentiality, plaintiffs disputed that Rule 1.6 applied at all, arguing that the third-party client's request for Steck to represent the debtors did not relate to Steck's representation of the third-party client. Plaintiffs contended that Rule 1.6 did not bar disclosure because it allows attorneys to reveal information if required by law or a court order.

¶ 12    The trial court granted plaintiffs' motion to compel and ordered Steck "to identify the third party who requested Steck represent the debtors and the reasons expressed by the third party for that request." The order noted that Steck refused, and the court, finding no showing of privilege, held Steck in direct civil contempt. The court imposed a $25-per-day fine until Steck complied. The trial court's order indicates that argument was held, but no transcript is contained in the record. Steck filed a motion to reconsider. The trial court denied the motion and stayed the fine "pending Steck's anticipated appeal." Steck, as anticipated, appealed.

¶ 13                              Jurisdiction

¶ 14    The parties do not dispute our jurisdiction, but each invokes different rules as the basis for it. In Steck's jurisdictional statement he cites Illinois Supreme Court Rule 301 (eff. Feb. 1, 1994) and 303 (eff. July 1, 2017). Plaintiffs' jurisdictional statement cites Illinois Supreme Court Rule 304(b)(5) (eff. Mar. 8, 2016). Even though the parties do not dispute the fact of our jurisdiction, we have an independent duty to consider its source *sua sponte*. *Revolution Portfolio, LLC v. Beale*, 341 Ill. App. 3d 1021, 1024-25 (2003). We agree with plaintiffs that we have jurisdiction under Rule 304.

¶ 15    The trial court's contempt order did not dispose of the entire proceeding. See *Pedigo v. Youngblood*, 2015 IL App (4th) 140222, ¶ 12. As a result, our jurisdiction cannot come from

Rule 303, which governs appeals from final judgments. Ill. S. Ct. R. 303(a) (eff. July 1, 2017). By contrast, Rule 304 allows for appeals from judgments or orders that do not dispose of the entire proceeding without the need for a special finding from the trial court. Ill. S. Ct. R. 304(b) (eff. Mar. 8, 2016). We have jurisdiction to hear appeals from orders "finding a person or entity in contempt of court which imposes a monetary or other penalty." Ill. S. Ct. R. 404(b)(5) (eff. Mar. 8, 2016). The trial court held Steck in direct civil contempt and imposed a monetary penalty. Accordingly, we have jurisdiction under Rule 304(b)(5). See *McGary v. Illinois Farmers Insurance*, 2016 IL App (1st) 143190, ¶¶ 29, 34 (finding Rule 304(b)(5) jurisdiction where trial court entered contempt order and imposed fine).

¶ 16                                    Analysis

¶ 17    The parties make the same arguments here as they did in the trial court. Steck invokes both attorney-client privilege and the Illinois Rules of Professional Conduct. Plaintiffs respond that Steck has not shown that the exceptions to the general rule—allowing disclosure of a client's identity—apply to Steck's third-party client. They go on to dispute the applicability of the Rules of Professional Conduct, arguing that the rules allow for an exception to confidentiality where required by other law or court order.

¶ 18    At oral argument, Steck made several references to his position that his client's identity is not discoverable because it is irrelevant to the citation proceedings. Steck certainly took that position during his citation examination ("it is not relevant in any issue on your citation"). He also alluded to relevance in his response to plaintiffs' motion to compel ("Plaintiff cannot articulate any sound basis for seeking the identity of a non-party client") and in his motion to reconsider the trial court's contempt finding ("creditors have articulated no independent basis

showing any particularized or particular need for the identity of a non-party client"). On appeal, however, Steck frames the question before us as one relating solely to attorney-client privilege and confidentiality rules. His statement of facts points out that he raised relevancy objections in the trial court. But the only other reference to relevance throughout his brief is one sentence at the end of the argument that states, in conclusory fashion, that the identity of the person "who arranged for an attorney to represent the judgment creditors is not relevant." In this court, "[p]oints not argued are forfeited." Ill. S. Ct. R. 341(h)(7) (eff. May 25, 2018). We will only address the arguments Steck has made.

¶ 19    Ordinarily we review a trial court's contempt order for an abuse of discretion. *In re Marriage of O'Malley*, 2016 IL App (1st) 151118, ¶ 25. But the only basis that Steck argues to support reversal of the trial court's judgment consists of his claim that the trial court erroneously declined to apply attorney-client privilege to his client's identity. We review the applicability of attorney-client privilege *de novo*. *Illinois Emcasco Insurance Co. v. Nationwide Mutual Insurance Co.*, 393 Ill. App. 3d 782, 785 (2009).

¶ 20    A judgment creditor has the statutory right to initiate supplementary proceedings "for the purposes of examining the judgment debtor or any other person to discover assets or income of the debtor." 735 ILCS 5/2-1402(a) (West 2016). Illinois Supreme Court Rule 277 (eff. Jan. 4, 2013) governs supplementary proceedings. 735 ILCS 5/2-1402(a) (West 2016). The rule provides that proceedings "may be against the judgment debtor or any third party the judgment creditor believes has property of or is indebted to the judgment debtor." Ill. S. Ct. R. 277(a) (eff. Jan. 4, 2013). We construe these provisions liberally. *Shatkin Investment Corp. v. Connelly*, 128

Ill. App. 3d 518, 522 (1984). Here, plaintiffs want to use this procedure to discover potential assets of the debtors known, controlled, or held by Steck's third-party client.

¶ 21    Steck, however, seeks to protect his client's identity primarily on the ground that revealing it would violate attorney-client privilege. Attorney-client privilege "must be strictly confined within its narrowest possible limits." (Internal quotation marks omitted.) *People v. Radojcic*, 2013 IL 114197, ¶ 41. Generally, the privilege does not protect a client's identity. *Cesena*, 201 Ill. App. 3d at 104-05 (citing *People v. Williams*, 97 Ill. 2d 252, 295 (1983)). Two exceptions have been recognized: (i) where "the client will be prejudiced in 'some substantial way' if his identity were disclosed" (*id.* at 105 (quoting *Williams*, 97 Ill. 2d at 295)) and (ii) where protection would be in the public interest (*id.* (citing *Shatkin*, 128 Ill. App. 3d at 525; see also *People v. Doe*, 55 Ill. App. 3d 811, 815 (1977) (collecting cases)). The party asserting the privilege bears the burden of establishing that it applies. *Shatkin*, 128 Ill. App. 3d at 525.

¶ 22    Steck's argument suffers at the outset because he has misapprehended his burden. At oral argument Steck asserted that he did not have to show any facts supporting the application of the privilege because, in his view, plaintiffs bear the burden of showing a good-faith belief that his unidentified client actually possesses the information they seek. Steck's point is well taken in terms of the citation proceedings more broadly: "Before a judgment creditor may proceed against a third party who is not the judgment debtor, the record must contain some evidence that the third party possesses assets of the judgment debtor." *R&J Construction Supply Co. v. Adamusik*, 2017 IL App (1st) 160778, ¶ 14. But plaintiffs cannot even attempt to put forward "some evidence" until they know the identity of the third party. Steck's assertion of privilege as to his client's identity has cut off the litigation before questions about plaintiffs' evidentiary basis

could even be asked. Steck inserted the issue of attorney-client privilege into this case, and as the proponent of the privilege, he must show its application.

¶ 23    On the merits, Steck initially argues, citing a 1961 law review comment, that applying the general rule allowing disclosure of a client's identity would sever the rule from its underlying purposes. See Comment, *Assertion of the Attorney-Client Privilege to Protect the Client's Identity*, 28 U. Chi. L. Rev. 533, 535 (1961). Steck does not explain why disclosure of his client's identity would run afoul of the purposes for the attorney-client privilege and, more critically, does not account for Illinois law on the subject.

¶ 24    In *Shatkin*, the court recognized that a client's identity is not protected by attorney-client privilege because "disclosure of the identity of an attorney's client provides proof of the existence of the relationship, provides the opposing party with proof that his [or her] opponent is not solely a nominal party, and provides proof to the court that the client whose secret is treasured is actual flesh and blood." (Internal quotation marks omitted.) *Shatkin*, 128 Ill. App. 3d at 525; see also *Doe*, 55 Ill. App. 3d at 814. So too do plaintiffs want to know whether the debtors paid Steck for his legal services. Steck said they did not and that his third-party client asked him to represent the debtors. According to Steck, the third-party client has not paid him with money but with "goodwill" in the form of business referrals. Revealing the third-party client's identity will either confirm or disprove the truth of this explanation. In other words, it would provide "proof of the existence of the relationship" between Steck and the client and dispel any suspicion that Steck might have invented this third-party client in an attempt to shield the debtors' assets from discovery.

¶ 25   Steck responds, citing *Fischer v. Kellenberger*, 73 Ill. App. 3d 550 (1979), that plaintiffs are improperly using citation proceedings "to identify individuals rather than assets." We find *Kellenberger* distinguishable. There is not a lot of factual development in the opinion, but it appears that the judgment creditors issued a citation against the debtor's parents that only "requested information about the whereabouts" of the debtor. *Id.* at 551. The court affirmed the trial court's decision to quash the citation primarily because "[t]he sole purpose of this plaintiff's activity in the lower court was to discover the *location* of her ex-husband." (Emphasis added.) *Id.* at 552. In other words no attempt was made, through the issuance of the citation, to discover assets.

¶ 26   *Kellenberger* reasoned that "the present location of a judgment debtor is relevant to the satisfaction of the judgment" but is not itself an asset or income of the debtor. *Id.* at 553. We wonder whether this point is as obvious as the court in *Kellenberger* thought it was; it is conceivable that a debtor's physical location would reveal things like whether he or she had real property or the ability to pay rent or own a car. But we need not question *Kellenberger* for our purposes because plaintiffs want to know the identity of Steck's third-party client for one reason: to determine whether he or she knows of or has access to any assets of the judgment debtors. The inferential chain is direct. The plaintiffs served a citation on Steck, as the debtors' lawyer, to determine whether he possessed or controlled debtor assets. In the course of denying his possession of debtor assets, Steck revealed a relationship between his unidentified client and the debtors that led to his representation of them. It is at least conceivable that a current or past financial relationship between the third-party client and the debtors inspired the client's assistance in securing Steck's representation. The only way that plaintiffs can determine whether

the third-party client knows of or controls assets of the debtors is learning the client's identity. Even accepting *Kellenberger*'s reasoning we find identity, unlike physical location, to be a necessary prerequisite to discovering assets of the debtors potentially held by the unidentified client.

¶ 27     Steck also argues that both the substantial prejudice and public interest exceptions to the general rule apply. See *Cesena*, 201 Ill. App. 3d at 104-05 (citing *Williams*, 97 Ill. 2d at 295, and *Shatkin*, 128 Ill. App. 3d at 525); see also *Doe*, 55 Ill. App. 3d at 815. But the party asserting privilege must allege more than simply "[e]conomic pressures" or generalized "fears of possible annoyance or embarrassment." *Doe*, 55 Ill. App. 3d at 814-15. Yet that is all Steck argues.

¶ 28     Steck maintains that "[i]t takes little imagination to discern that friendship or other associations or fears, not only of reprisal but also the impact of a social connection on a reputation or business, *may* be sufficient motives." (Emphasis added.) Steck, as the party who bears the burden of establishing the privilege, must rely on facts and not his imagination. Steck's generalizations furnish nothing of substance. In a similar vein, he argues revealing his client's identity "opens him or her up to prejudicial harassment concerning his or her motives" without providing any details about how that would be so. In the same vague fashion, Steck asserts that the attorney-client privilege is "certainly within the public interest" and is "impacted" by the disclosure of his client's identity without any explanation of how it would be impacted.

¶ 29     Steck's lack of any factual support whatever dooms his attempt to rely on the public interest exception. See *Doe*, 55 Ill. App. 3d at 815 (privilege applied to client's identity where client providing information to further criminal investigation into wrongdoing affecting the public at large (citing *In re Kaplan*, 168 N.E.2d 660 (N.Y. 1960))). It similarly dooms his

attempt to suggest that his client will be prejudiced by the disclosure where prejudice is most commonly found when the client could be criminally or civilly liable if the client's identity is known. *E.g.*, *In re Grand Jury Proceeding*, 898 F.2d 565 (7th Cir. 1990) (privilege applied to client's identity where client could be criminally implicated if identity revealed). By contrast, all we know is that the third-party client asked Steck to represent the debtors.

¶ 30    As an additional argument, Steck briefly mentions the Illinois Rules of Professional Conduct as a source of protection for his third-party client's identity. We disagree. Rule 1.6 prohibits a lawyer from "reveal[ing] information relating to the representation of a client unless the client gives informed consent *** or the disclosure is permitted by paragraph (b)." Ill. R. Prof'l Conduct (2010) R. 1.6(a) (eff. Jan. 1, 2016). Paragraph (b), in turn, allows a lawyer to reveal information "to comply with other law or a court order." Ill. R. Prof'l Conduct (2010) R. 1.6(b)(6) (eff. Jan. 1, 2016). The exception alters the traditional recognition that a lawyer's duty to retain client confidences offers broader protections than the evidentiary attorney-client privilege. See, *e.g.*, *Lawyer Disciplinary Board v. McGraw*, 461 S.E.2d 850, 859-60 (W. Va. 1995); *Dietz v. Doe*, 935 P.2d 611, 614 n.3 (Wash. 1997). Other jurisdictions have interpreted the exception to mean that resolution of the attorney-client privilege question resolves the professional rules question. See *Dietz*, 935 P.2d at 614 n.3; *United States v. Evans*, 954 F. Supp. 165, 170 (N.D. Ill. 1997) (relying on exception for "disclosure of client confidences upon a court order" to reject arguments based on Illinois Rules of Professional Conduct where court also rejected attorney-client privilege argument).

¶ 31    We agree with this interpretation of the relationship between attorney-client privilege and confidentiality. Rule 1.6 allows lawyers to yield to "other law or a court order" when it comes to

disclosure of information related to their representation of clients. Ill. R. Prof'l Conduct (2010) R. 1.6(b)(6) (eff. Jan. 1, 2016). Here, we have both "other law"—the evidentiary attorney-client privilege—and a "court order" interpreting it. We conclude that neither attorney-client privilege nor the Rules of Professional Conduct bar the disclosure of Steck's third-party client's identity.

¶ 32      Affirmed and remanded.